**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MARIE JOSEPH, | : | |
| | : | Case No.:  1:19-cv-00641-TSB |
| Plaintiff, | : | |
| | : | Judge:  Timothy S. Black |
| vs. | : | |
| | : | **POND REALTY COMPANY'S MOTION** |
| POND REALTY COMPANY, *et al.*, | : | **TO DISMISS FOR FAILURE TO STATE** |
| | : | **A CLAIM** |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| COLUMBIA OLDSMOBILE COMPANY, | : | |
| | : | |
| Nominal Defendant. | : | |
| | : | |

Plaintiff Marie Joseph ("Plaintiff") spent the last two and a half years litigating alleged breach of fiduciary duty claims against Defendant Ronald Joseph, Sr. ("Ron Joseph"), the President and majority shareholder of Nominal Defendant Columbia Oldsmobile Company ("Columbia").  After years of contentious, time-consuming, and costly litigation by Plaintiff, she tried her breach of fiduciary duty claims to a jury.  Following a multi-week trial, the jury returned a verdict in favor of Ron Joseph on all of the claims, including those challenging allegedly improper transfers to Pond Realty Company ("Pond").  The Court entered final judgment against Plaintiff based on the jury's verdict.  Plaintiff has appealed that judgment and her appeal is currently pending before the United States Court of Appeal for the Sixth Circuit. After being permitted to bring breach of fiduciary duty claims challenging transfers by Columbia to Pond, trying them to verdict in a multi-week jury trial, and losing, Plaintiff now seeks to bring *the very same claims,* challenging the same transfers to Pond, against a different officer of Columbia. Plaintiff seeks to try the claims a second time to a second jury.  Plaintiff's attempt to

repeat the previously-resolved litigation is fundamentally improper. For the many reasons discussed in the attached memorandum in support, Plaintiff's new complaint fails as a matter of law. Defendant Pond, by and through its undersigned counsel, pursuant to Rule 12(b)(6) and applicable law, requests that the complaint in this matter be dismissed with prejudice to refiling.

Respectfully submitted,

/s/ Scott A. Kane
Scott A. Kane (0068839)
Colter Paulson (0081903)
Jennifer Dollard-Smith (0093624)
SQUIRE PATTON BOGGS (US) LLP
201 East Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 361-1240
Fax: (513) 361-1201
scott.kane@squirepb.com
colter.paulson@squirepb.com
jennifer.dollard-smith@squirepb.com

*Attorneys for Pond Realty Company*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MARIE JOSEPH, | : | |
| | : | Case No.: 1:19-cv-00641-TSB |
| Plaintiff, | : | |
| | : | Judge: Timothy S. Black |
| vs. | : | |
| | : | **MEMORNADUM IN SUPPORT OF** |
| POND REALTY COMPANY, *et al.*, | : | **POND REALTY COMPANY'S MOTION** |
| | : | **TO DISMISS FOR FAILURE TO STATE** |
| Defendants, | : | **A CLAIM** |
| | : | |
| and | : | |
| | : | |
| COLUMBIA OLDSMOBILE COMPANY, | : | |
| | : | |
| Nominal Defendant. | : | |
| | : | |

## I.    Factual Background.

Plaintiff filed Case No. 1:16-cv-00465[1] against Ron Joseph in April 2016. The original complaint in that case (the "2016 Complaint") alleged that Ron Joseph violated Plaintiff's rights as a shareholder of Columbia because he allegedly engaged in "breaches of fiduciary duty." (2016 Compl. ¶¶ 74–80). The 2016 Complaint alleged that Ron Joseph violated fiduciary duties as both a controlling shareholder of Columbia and also as an officer and director of Columbia. (*Id*. at ¶ 19 (alleging that Ron while "the chief officer of Columbia, and without Marie's knowledge, implement[ed] a plan ..."); ¶ 33 ("As the executive officer of a family business, Ron exercised authority ..."); ¶ 59 ("Ron was trusted to serve the family and shareholders as Columbia's chief officer ... and he owed fiduciary duties to Marie.")).    In January 2017, Plaintiff's amended complaint alleged that Ron Joseph violated his fiduciary duties because he

---

[1] The Sixth Circuit has "held that the court may take judicial notice of its own record in the prior case on which the claim preclusion argument is premised." *Saylor v. United States*, 315 F.3d 664, 667–668 (6th Cir. 2003).

"caused funds to be paid by Columbia and Columbia's subsidiaries … including but not limited to so-called management fees paid to Pond Realty Company." (Dkt 27, First Am. Compl., ¶ 258).[2] Like the 2016 Complaint, the amended complaint continued to assert breach of fiduciary duty claims against Ron in his capacity as an officer of Columbia. (*Id*. at ¶ 129 (alleging that Ron and others, "as officers of Columbia ... owe fiduciary duties to Marie."); ¶ 123 (alleging that no documents or meeting minutes "reflect any disclosures by Ron or the other officers of Columbia about specific material transactions").

The transactions between Columbia and Pond became one of Plaintiff's chief theories of liability. (Pl. Opp. to Add. Defs. MSJ (Aug. 3, 2017), p. 1–2 (referring to allegedly improper "transfers of funds from Columbia or its subsidiaries to Joseph Management Company, which is a "d/b/a" of Pond Realty Company"); *id*. at 9 ("there is already ample evidence in the record to establish that money has indeed been transferred from Columbia and its subsidiaries to various 'related party' entities – including but not limited to funneling millions of dollars to Pond Realty Company")). Plaintiff continued to assert Ron's alleged liability as an officer of Columbia. (*See, e.g*., Pl. Memo. ISO Mtn To Compel and Remove the 2008 Discov. Limit (filed Oct. 30, 2017) p. 6 ("the President and Chief Executive Officer of Columbia is seizing a corporate opportunity"), p. 7 ("As President, Ron has breached every duty a majority shareholder and an officer owes to a company with respect to these transactions…")).

Pond also figured large in Plaintiff's summary judgment briefing. (Dkt 120, Pl. MSJ, p. 17–18 ("Through discovery, evidence has surfaced revealing that money totaling not less than $6,602,775 has been transferred from Columbia to Pond Realty … the transfers to Pond Realty are reflected in the accounting records of Columbia and its Columbia Automotive, Inc.

_____

[2] All references to the docket in this motion are to Case No. 1:16-cv-00465 unless otherwise noted.

subsidiary as transfers to Joseph Management."); Dkt 121, Pl. Mtn to Alter Amend or Vacate, p. 11–13 ("These schemes include: Pond charging phony management fees … Plaintiff learned that Columbia has paid Pond Realty millions of dollars in phony management fees."); Dkt 134, Pl. MSJ Opp., p. 10–11 ("the transfers of money from Columbia and its Columbia Automotive, Inc. subsidiary to Pond constituted (i) self-dealing transactions that were (ii) undisclosed and (iii) unauthorized. Therefore, the implementation of those transfers of money breached the fiduciary duties of Ron … to refrain from self-dealing and also breached several other fiduciary duties"); *id*. at 11–12 ("Ron is a majority and controlling shareholder of Columbia, as well as its President. … Therefore, in any transaction between Columbia or its subsidiaries (on the one hand) and Pond (on the other), Ron is – in the vernacular phrase – on both sides of the deal. These so-called "related party" transactions with Pond constitute classic self-dealing.")).

Indeed, the transfers to Pond were Plaintiff's chief focus at trial—including her claims regarding management fees, deposits into a certain banking "sweep" account, and other transactions. In her opening statement, Plaintiff argued that "money was paid to a company called Pond Realty Corporation. $8,889,000 in these four-and-a-half years. … He set it up years ago. Money is being funneled to Pond." (Dkt 189, Trial Tr. p. 8). Plaintiff's opening statement returned to Pond repeatedly. (*See id*. (referring to sweep account and stating that "[t]he evidence will show that $4,230,000 of Columbia money was literally taken out of this bucket and put in Pond Realty's account."); *id*. at 10 (referring to Ron's "control of Columbia" and stating that "[h]e called it management fees. That somehow Pond with only two employees … somehow provided management to Columbia to the tune of soaking them for millions and millions of dollars.); *id*. at 13–14 ("The evidence is going to show that Pond is on paper only. It provides no management. And, like I said, you'll see that this is nothing more than self-dealing and a scheme

to get money out of Columbia and into his hands. This is called undisclosed self-dealing. Management fees are just one example. You're going to hear other examples. … There's been other transfers of money from Columbia and its subsidiaries to Pond that are not labeled as management fees. …."")).

Plaintiff's focus on Pond continued throughout the trial. The trial transcript reflects hundreds of pages of testimony discussing the purpose, amount, and result of various transactions with Pond, including testimony from virtually every witness. A search of the trial transcripts shows that Pond was mentioned *over 800 times* during the trial (499 references to "Pond" and another 336 references to its dba name "Joseph Management"). To put that emphasis into perspective, this is far more than "Marie" (350) and "Plaintiff" (163) combined, or even the terms "Ron" (491) and "Ronald" (128) combined. In the multiple weeks of trial, no issue was litigated more than transactions between Columbia and Pond. This included Plaintiff's contentions that Ron Joseph was liable as an officer of Columbia. (Dkt 220, Closing Argument, p. 71 ("Can you imagine what it would be like if everybody that's in a position of power … presidents of companies, can just simply deny liability and get away with it?"); Dkt 189, Opening Argument, p. 10 ("he's the controlling shareholder and president of Columbia.… But he's also the president of Pond. … It's an inherent conflict of interest.")).

At trial, both Plaintiff and Ron called numerous witnesses who testified to the nature and appropriateness of the transactions with Pond. These included not only Mr. Van Emon, but also numerous other current and former officers and employees of Columbia who testified to the legitimacy of each of the transactions, including those for management fees. (Dkt 213, Trial Tr. (Van Emon) at 45, 50–52, 59–68; Dkt 203, Trial Tr. (Lou Rouse) at 4–5, 8–14; Dkt 212, Trial Tr. (Karl Stewart) at 11–16; Dkt 217, Trial Tr. (Linda May) at 28, 35–41). Plaintiff called as

adverse witnesses each of the four owners of Pond and aggressively questioned them about management fees and other purported "transfers" to Pond. Each of them testified extensively about the nature of the management services provided by Pond dba Joseph Management. (Dkt 216, Trial Tr. (Richard Joseph) at 6–7, 12–21; Dkt 218, Trial Tr. (Ronald Joseph, Jr.) at 148–154, (George Joseph) at 178–79, 185–87; Dkt 221, Trial Tr. (George Joseph) at 23–25, 50–53, (Richard Joseph) at 106–07; Dkt 214, Trial Tr. (Greg Joseph) at 8–10, 17–20).

Plaintiff continued to focus on Pond in her closing argument, claiming that that Ron Joseph "funneled money out of Pond -- into Pond in numerous ways, as you know. He was on both sides of these transactions, and he admits it." (Dkt 220, Closing Argument, p. 4). Plaintiff reviewed the payments to Pond and asked the jury for "the $8,851,321 that was transferred to Pond by Columbia and Columbia Automotive" and explained that "if you conclude that all of what was paid to Joseph Management, other than the U.S. Bank Money Center transactions, was for, supposedly, these management fees, we ask you to fill in the blank in question 6 on page 43 of at least eight million eight fifty-one three twenty-one." (*Id*. at 24–25).

Plaintiff was permitted to, and did, thoroughly try claims for breach of fiduciary duty focusing on payments *by Columbia to Pond*. Importantly, this trial followed approximately a year and half of unusually aggressive litigation by Plaintiff that included extensive written discovery and many depositions focusing on issues related to Pond. These depositions included both Mr. Van Emon and another former CFO of Columbia who testified as to the nature and appropriateness of management fees paid to Pond. (*See, e.g.,* Dkt 227-5, Lou Rouse Dep. at 90–93, 100 ("We tried to stay consistent with the industry and K.B. Parrish knowledge of the industry….")). At the culmination of the lengthy litigation, after weeks of trial testimony and Plaintiff's argument to the jury focusing on payments *by Columbia to Pond*, the jury rejected

Plaintiff's breach of fiduciary duty claims. Regarding some of the allegedly improper transfers, the jury specifically determined that Ron met a burden of proving that "all other miscellaneous payments made by Columbia, including other transfers from Columbia and its subsidiaries to Pond Realty Company … were fair to Columbia." (Dkt 210, Interrogatory No. 7 (Part 4), p. 14).

This Court entered final judgment on Plaintiff's fiduciary duty claims on March 18, 2019 (Dkt 232) and Plaintiff appealed that judgment on April 16, 2019 (Dkt 237). Plaintiff's appeal remains pending. With the appeal of the previously tried claims pending, Plaintiff filed this action against Pond and Mr. Van Emon on August 5, 2019. (*See* Complaint in Case No. 1:19-cv-00641) (the "New Complaint")). The New Complaint seeks to challenge, under a breach of fiduciary duty theory against Mr. Van Emon as a former officer of Columbia, the same transfers *by Columbia to Pond* that Plaintiff litigated to judgment in the prior trial and continues to litigate in the pending appeal.

## II.     Law & Argument.

A fundamental principle of our system of justice is that an unsatisfied litigant cannot re-litigate claims that were previously resolved against her. That is exactly what Plaintiff seeks to do in this case. Plaintiff's attempt is fundamentally improper and deficient as a matter of law for the many reasons discussed below.

### A.     Plaintiff's New Complaint is Barred by Res Judicata.

The doctrine of res judicata is not some dry or technical legal precept. It is not "a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts..." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 61 L. Ed. 1148, 37 S. Ct. 506 (1917). It protects parties "from the expense and vexation of attending multiple lawsuits, conserves judicial resources, and fosters reliance on

judicial action by minimizing the possibility of inconsistent decisions." *U.S. v. Stauffer Chemical Co.*, 684 F.2d 1174, 1180 (6th Cir. 1982) (citation omitted). *See also Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) (observing that res judicata "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes" and "its enforcement is essential to the maintenance of social order" so litigants can and will rely on the conclusiveness of judgments of the courts) (citations omitted).

Often referred to as claim preclusion, the doctrine of res judicata "mandates that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties, with respect both to eve[ry] matter that was actually litigated in the first case, as well as to every ground of recovery that may have been presented." *Black v. Ryder/P.I.E. Nationwide*, 15 F.3d 573, 582 (6th Cir. 1994) (citation omitted). One purpose of this doctrine is "to compel litigants to bring all related claims in a single lawsuit." *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 Fed. Appx. 476, 482 (6th Cir. 2014) (citations and quotations omitted).

Plaintiff's New Complaint fails the basic tenets of claim preclusion and offends the interests of justice underlying it. She is seeking to re-litigate claims that *Columbia* made improper transfers *to Pond* of "money or other things of value." (New Complaint, ¶¶ 43–50, 77–79). As discussed at length above, these are the same claims that Plaintiff already tried to a jury in a prior case. (*See* Dkt. 27, First Am. Compl., ¶ 112 (alleging that Ron is "channeling assets, transactions, income streams and other things of value from Columbia and its subsidiaries to himself and to other entities owned or controlled by Ron or Ron's Sons"); Dkt 216, Trial Tr., p. 222 (question from Plaintiff's counsel asking "[a]re there any documents that would show goods, services, or other things of value provided by Pond Realty to Columbia")). Plaintiff's claims are

precluded as a matter of law and the Court should dismiss them as barred by res judicata. *Apseloff v. Family Dollar Stores, Inc.*, No. 1:06-cv-133, 2006 U.S. Dist. LEXIS 45779, at \*4 n.3 (S.D. Ohio July 6, 2006) ("defendant is entitled to raise the *res judicata* issue in this motion to dismiss") (Black, J.).

In the Sixth Circuit,[3] res judicata applies if the following elements are present: (1) a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) an identity of the causes of action. *Sanders v. Confectionary Prods. v. Heller Fin. Inc.*, 973 F.2d 474, 480 (6th Cir. 1992) (citations omitted). All of those elements apply to preclude Plaintiff's claims in the New Complaint.

1. **There was a final decision on the merits**. This Court entered final judgment on Plaintiff's fiduciary duty claims against Ron Joseph on March 18, 2019 (*See* Dkt 232, Final Judgment). The Court's judgment under Rule 54(b) was final for purposes of res judicata— indeed, Plaintiff took an appeal from that judgment. *See Humphreys v. Bic Corp.*, No. 90-5529, 1991 U.S. App. LEXIS 906, at \*10 (6th Cir. Jan. 18, 1991) (analyzing finality for analogous preclusion principle and stating that "[i]n the federal system, collateral estoppel principles are based on a final judgment, so that a Rule 54(b) order is viewed as final for collateral estoppel purposes"); *Mead Corp v. Apfel*, 128 F. Supp. 2d 1096, 1103 (S.D. Ohio 2001) (Rule 54(b) requires consideration of both "immediate appealability" and that "[a] judicial determination has no *res judicata* effect until it is embodied in a final judgment"); *Northwest Airlines v. Astraea*

---

[3] A federal court sitting in diversity looks to federal law to determine the preclusive effect of a prior federal judgment. *See J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) ("[W]e shall apply federal res judicata principles in successive federal diversity actions.").

*Aviation Servs.*, 930 F. Supp. 1317, 1324 (D. Minn. 1996) ("Finality has been found to exist by courts when the district court has disposed of all the rights and liabilities of at least one party to at least one claim.").

> **2. Any privity requirement is satisfied.** The Sixth Circuit does not require mutuality for the defensive use of preclusion doctrines. *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 415–16 (6th Cir. 2016) (applying res judicata because all that is required for the "same parties" prong of res judicata is a "mutuality of interest" which means an "identity of desired result") (citation omitted); *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1111 (6th Cir. 1981) ("Federal courts are no longer bound by rigid definitions of the parties or their privies for purposes of applying res judicata or collateral estoppel.... [Current defendant's] interests were "so closely aligned" with those of [prior defendant] that they were fairly represented in the [prior] proceedings."); *Philips v. NBA*, No. 2:10-cv-14734, 2011 U.S. Dist. LEXIS 81455, at *6 (E.D. Mich. July 26, 2011) ("In the case of nonmutual claim preclusion, "where a stranger to a first action is so closely and materially related to the named defendant ... res judicata will bar a subsequent claim because it would merely repeat the prior claim.").

In this case, Plaintiff had a full and fair opportunity to litigate her claims regarding transfers from Columbia to Pond in the prior case. While Plaintiff may be dissatisfied with the result, her remedy lies currently-pending appeal to the Sixth Circuit, not in re-litigating the previously resolved claims against another officer of Columbia. Moreover, even if privity were required, it is satisfied here. As a corporate officer of Columbia, Mr. Van Emon is in privity with both Columbia and Columbia's President, Ron Joseph, and Pond Realty is in privity with its officer, Ron Joseph. (New Compl. ¶ 8, 10, 15). For purposes of any privity requirement, Ron Joseph represented the interests of Columbia, its other officers, and Pond in litigating Plaintiff's

challenges to the appropriateness of *transfers from Columbia to Pond* – the very transfers that Plaintiff seeks to re-litigate now. The current defendants' interests were closely aligned with Ron Joseph in the prior litigation (Plaintiff's own allegations were that he was on "both sides" of the challenged transactions) and they were fairly represented in the prior case. *See Snyder v. All-Pak*, 2006 U.S. Dist. LEXIS 76010, at n.3 (N.D. Ohio 2006) ("corporate officers generally are considered to be in privity with their associated corporations"); *see also Walker v. Gen. Tel. Co*., 25 F. App'x 332, 336 (6th Cir. 2001) (officer was in privity with corporation where he was "involved with the prior litigation, and his interests were adequately represented"); *Sanders*, 973 F.2d at 481 (president of company was in privity with company); *Fox v. Maulding*, 112 F.3d 453, 459-60 (10th Cir. 1997) (finding privity between a corporate officer and the corporation); *Carpenter v. Fleet/Norstar Bank*, 91-cv-6330, 1992 U.S. Dist. LEXIS 17227, at *2 (S.D.N.Y. Nov. 9, 1992) (finding privity between an officer and corporation where officer "participated in that previous litigation"); *Robinson v. National Cash Register Company*, 808 F.2d 1119, 1121, 1124-25 (5th Cir. 1987) (finding privity between corporation and officers in a closely-held corporation).

Likewise, Plaintiff's attempt to treat her New Complaint as a derivative action does not affect any privity requirement. In the prior action, the Court permitted Plaintiff to bring claims regarding alleged injury to Columbia. (*See* Dkt 161, MSJ Order, p. 3–4; Dkt 208, Jury Instructions, p. 18, 19, 25, 26, 50 (discussing whether Ron Joseph's actions "harmed Columbia" were "adverse to Columbia" or were "fair to Columbia")). In the purported derivative claim now, Plaintiff seeks recovery for the same alleged injury to Columbia. (*E.g.,* New Compl. ¶¶ 45–51 (alleging that Columbia has been damaged by "transfers of money or other things of value from Columbia to Pond ... without fair consideration")). Clearly, Plaintiff is in privity with

-10-

Columbia with respect to claims that she already litigated on its behalf. This is consistent with applicable law. *See, e.g., Joe's Pizza v. Aetna Life & Cas. Co.*, 263 Conn. 863, 869 (1996) ("For the purposes of affording opportunity for a day in court on issues contested in litigation ... it may be presumed that the interests of the shareholders and the closely held corporation itself coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.") (citing 2 Restatement (Second) of Judgments § 59); *Aetna Casualty & Surety Co. v. Kerr-McGee Chemical Corp.*, 875 F.2d 1252, 1259 (7th Cir. 1989) (holding that "judgment in an action brought by a shareholder of a closely held corporation is binding on the corporation in later litigation"); *Fink v. Manger*, 988 F. Supp. 74, 79 (D.C. Conn. 1997) (holding that although plaintiff "claims that the individual damages raised in the present action are personal in nature and in no way relate to the [derivative claims he asserted in] the state case, they are related *through the acts and allegations which generated them*" and therefore barred by res judicata) (emphasis added).

   **3. The claims in this lawsuit could have been (and were) asserted in Plaintiff's original lawsuit.** This lawsuit asserts claims for breach of fiduciary duty premised on transfers between Columbia and Pond—exactly the same fiduciary duty claims that were brought in the original suit. These claims are precluded by the prior judgment. Attempting to change the nominal defendants for the claims does not alter this result.

   A Plaintiff "may not litigate a second claim later, where, as here, the two claims arose from the same transaction, or series of transactions." *Heike*, 573 Fed. Appx. at 482 (citations and quotations omitted); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 580 (6th Cir. 2008) (an identity of claims is satisfied if "'the claims arose out of the same transaction or series of transactions,' or if 'the claims arose out of the same core of operative facts.'"). This "same

transaction" test ensures that "plaintiffs cannot avoid the effects of claim preclusion by merely repacking their grievances into alternative theories of recovery or by seeking different remedies." *Heike*, 573 Fed. Appx. at 482. The doctrine is succinctly summarized as "having failed to recover on one legal theory, a litigant cannot attempt to relitigate the same claim under a different theory of recovery." *Scozzari v. City of Clare*, 2012 U.S. Dist. LEXIS 72584, at *11 (E.D. Mich. May 24, 2012). Because Plaintiff's original action sought damages for transactions between Columbia and Pond, her attempt now to bring the same claims based on the same transactions must fail.

Even if Plaintiff asserts that her new claims—notwithstanding that they arise out of the same transaction as the breach of fiduciary duty claim she litigated to judgment previously—are somehow different, they still are precluded. "Claim preclusion not only prohibits parties from bringing claims they already have brought, but also from bringing those claims they ***should*** have brought." *Heike*, 573 Fed. Appx. at 482 (citations and quotations omitted). In other words, "[t]he doctrine precludes litigation of claims that were previously available to the parties, regardless of whether they were asserted or determined in the first proceeding." *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 462–63 (6th Cir. 1999) (citation omitted). Thus, Plaintiff's attempt to re-litigate claims arising from the same transactions she challenged previously is improper and foreclosed as a matter of law.

4.      **The causes of action are identical.** The Sixth Circuit has explained that the final factor requires that the facts creating the claims in both cases are similar. *Walker v. General Tel. Co.*, 25 Fed. Appx. 332 (6th Cir. 2001) ("For purposes of res judicata, identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action."); *Apseloff*, 2006 U.S. Dist. LEXIS 45779, at *6-7 ("The critical element in

analyzing res judicata is whether or not the claims arose out of the same transaction."). In this case, the facts are not similar, they are identical. Plaintiff is attempting to bring fiduciary duty claims based on the same transfers from Columbia to Pond that she challenged in the prior fiduciary duty claims that she tried and lost.

Plaintiff's grasping attempt to change defendants and change theories does not prevent the application of res judicata. As aptly explained in *Wilkins v. Jakeway*, "by bringing two different suits which present two different theories of the case arising from the same factual situation, counsel has engaged in the precise behavior the doctrine res judicata seeks to discourage." 183 F.3d 528, 535 (6th Cir. 1999); *see also Alexander v. Chicago Park District*, 773 F.2d 850, 854 (7th Cir. 1985) (holding that claims arising from the same transaction are the same cause of action and that "a mere change in the legal theory does not create a new cause of action"); *Car Carriers*, 789 F.2d at 593 (holding that for purposes of res judicata, "[o]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost").

Finally, there are no temporal differences preventing the application of res judicata and the New Complaint falls within the period covered by the prior suit.[4] The transactions involving Mr. Van Emon, which are the subject of the New Complaint (*see* Complaint, ¶¶ 25-37), necessarily end by **October 2016**—as that was the last time Mr. Van Emon worked for Columbia or Pond (*see* Dkt 213, Trial Tr. (Van Emon) at 38 ("Q. When did you last work with the [dealership group]? A. I believe it's October of 2016.")). The original lawsuit has a much

---

[4] This Court instructed the jury that Plaintiff's claims included anything "on or after April 12, 2012" (Dkt 208, Jury Instructions, p. 20). While Plaintiff asked for a date earlier than 2012, she did not object to the forward-looking language. (Dkt 223, Charging Conference, Oct. 19, 2018, at 106:17-24).

broader scope, covering claims until judgment was entered in March 2019.  *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993) ("The date of judgment, not the date of filing, controls the application of res judicata principles.").   Nor does the timeframe ultimately matter to the analysis.  As explained in *Dubuc v. Green Oak Township*, 312 F.3d 736 (6th Cir. 2002), "[t]he doctrine of res judicata would become meaningless if a party could continue to relitigate the same issue … by merely positing a few additional facts that occurred after the initial suit.… When, as here, it is obvious that the alleged ongoing retaliation ***is actually the defendant continuing on the same course of conduct***, which has previously been found by a court to be proper, a subsequent court must conclude that the plaintiff is simply trying to relitigate the same claim" (emphasis added).

**B.** **Plaintiff's New Complaint is Impermissible Claim Splitting, and Results in Duplicative Litigation.**

The New Complaint can also be dismissed as impermissible claim-splitting.  The preclusion against claim-splitting is related to but separate from res judicata.  As early as 1876, the U.S. Supreme Court concluded that:

> It is undoubtedly a *settled principle* that a party seeking to enforce a claim, legal or equitable, must present to the court, either by the pleadings or proofs, or both, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. *There would be no end to litigation if such a practice were permissible*.

*Stark v. Starr*, 94 U.S. 477, 485 (1876) (emphasis added).  In this case, not only is Plaintiff attempting to split claims for breach of fiduciary duty relating to the same transaction, she is attempting to simultaneously litigate contrary theories (including with respect to derivative standing), in the form of the New Complaint and her pending Sixth Circuit appeal.

Relatedly, "as part of its inherent power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit[.]"  *Stewart v. P&G*, No. C-1-06-

374, 2006 U.S. Dist. LEXIS 102384, at *2 (S.D. Ohio July 21, 2006). The dismissal of duplicative claims "foster[s] judicial economy and the comprehensive disposition of litigation, and protects parties from the vexation of concurrent litigation over the same subject matter." *Brown v. Davids*, No. 1:19-cv-85, 2019 U.S. Dist. LEXIS 66959, at *5 (W.D. Mich. April 19, 2019) (citations and quotations omitted). The cases need not be totally identical—cases are improperly duplicative if "a determination in one action leaves little or nothing to be determined in the other." *De Angelis v. Nat'l Entm't Grp.*, No. 2:17-cv-924, 2019 U.S. Dist. LEXIS 33889, at *15 (S.D. Ohio March 4, 2019).

As explained above, Plaintiff's New Complaint challenges the same transactions that she challenged previously and tried to verdict—the alleged "transfers of money or other things of value from Columbia to Pond ... without the approval or consent of disinterested officers, directors, or shareholders of Columbia." (New Compl. at ¶ 45; *see also, e.g.*, Dkt 27, First Am. Compl., ¶ 258 (alleging that Ron Sr. "caused funds to be paid by Columbia and Columbia's subsidiaries ... including but not limited to [the] so-called management fees to Pond Realty Company")). If Plaintiff were permitted to continue filing suits against different Columbia officers and employees "[t]here would be no end to [this] litigation." *Stark*, 94 U.S. at 485. Indeed, "[t]his type of duplicity should be avoided at all costs." *Wilkins*, 183 F.3d at 535. The New Complaint should be dismissed as impermissible claim-splitting and duplicative litigation.

### C. Plaintiff's New Complaint is Barred by Judicial Estoppel.

This Court should also bar Plaintiff's attempt to re-state her previously tried direct claims as derivative claims under the doctrine of judicial estoppel, which "prevent[s] a party from taking a position inconsistent with a position unequivocally and successfully asserted by the same party in another proceeding." *Speroni S.P.A. v. Perceptron, Inc.*, 12 Fed. Appx. 355, 358

(6th Cir. 2001) (citations omitted). "Courts have invoked a variety of metaphors to describe the doctrine, characterizing it as a rule against 'playing fast and loose with the courts,' blowing hot and cold as the occasion demands,' or 'having one's cake and eating it too.'" *Id*. (internal citations omitted); *see also Wloszek v. Weston, Hurd, Fallon, Paisley, & Howley, LLP*, 2004-Ohio-146, 2004 Ohio App. LEXIS 119, at ¶ 27 ("The policy behind judicial estoppel is to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit the exigency of the moment."). Judicial estoppel is appropriate because Plaintiff successfully claimed in the prior action that her claims regarding Pond were permissible *direct* claims, not purely *derivative* claims. Now, she asserts a contrary position.

Plaintiff previously argued that she was entitled to bring direct claims because as a minority shareholder, she was "individually harmed" by Ron Joseph's majority control of Columbia. (Dkt. 134, Pls. MSJ Opp., p. 29–30). Plaintiff alleged that "a derivative remedy is not an effective remedy because the wrongdoers would be the principal beneficiaries of the recovery." (*Id*. at 31). She prevailed on this argument, insofar as the Court permitted her to try direct claims against Ron related to management fees and other payments to Pond. (Dkt. 161, MSJ Order, p. 3–4). The Court held that "[r]equiring Marie to bring this action derivatively would have the undesirable result of placing any recovery under the control of Ron, Sr.**,** the person responsible for the (alleged) wrongdoing in the first instance." (*Id*. at 4).

Having persuaded the Court to permit the claims, which she tried and lost, Plaintiff's New Complaint attempts an about-face, alleging that claims based on the same transactions should now be brought again ***derivatively*** on behalf of Columbia. Judicial estoppel prohibits such opportunistic attempts at a "do over." Plaintiff sought and was provided her day in court –

in fact, many days in this Court, with a full opportunity to present evidence and argument to an impartial jury. Plaintiff lost. A jury of her peers returned a verdict against her. Plaintiff's dissatisfaction with that result, however great, does not permit her to re-try the same claims to a new jury by now seeking to characterize them as derivative, contrary to her own prior position.

> **D.  Plaintiff's New Complaint Fails to Plead any Cognizable Claim Against Pond.**

The New Complaint also fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must give notice to the defendant as to what claims are alleged. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). The New Complaint violates this principle by making "conclusory allegations" that Pond somehow "violated the law." *16630 Southfield Ltd. P'Ship v. Flagstar Bank*, 727 F.3d 502, 504 (6th Cir. 2013). Not only does the New Complaint fail to contain factual allegations to make its claims plausible, its theory against Pond relies upon an aiding-and-abetting theory that has been rejected by Ohio courts. Dismissal is therefore warranted under Rule 12(b)(6) because the Complaint both fails to allege plausible facts and fails to state a claim under any cognizable legal theory supporting relief.

> **1.  The Complaint does not identify, or plead the elements of, any recognized cause of action.**

Plaintiff's New Complaint fails to identify any specific transactions (or even any types of transaction) that she alleges were improper.[5] Aside from the vague assertion that "things of value" were transferred from Columbia to Pond, Plaintiff's New Complaint contains no factual

---

[5] As noted above, the jury determined that Ron established the fairness of various transactions between Columbia and Pond. Plaintiff's vague and undefined reference to transactions between Columbia and Pond in the New Complaint would include transfers also barred by collateral estoppel.

allegations supporting a recognized cause of action against Pond. (New Compl., ¶ 29). Such an ambiguous pleading "simply does not provide sufficient detail of [her] claim to give [Pond] fair notice of the claim against it, and the court is not required to create a claim for [her]." *Wallace v. Johnson Sec.*, No. 94-5981, 1995 U.S. App. LEXIS 11617, at *3 (6th Cir. 1995) (citations omitted).

> ### 2. The attempted claims against Pond depend on aiding and abetting theories not recognized by Ohio law.

That only thing the New Complaint does allege against Pond is to claim its "participation" in undescribed and purportedly improper transactions. (New Compl. ¶¶ 77–78). Even if true (and it is not), participation in the improper conduct of another does fails to state a claim under Ohio law. As Plaintiff conceded when this ***precise issue*** was litigated in the prior case (Pls. Opp. to Defs. MSJ (Aug. 3, 2017), at 12–14), claims that a defendant "participated in" another's tortious conduct are not recognized under Ohio law. *See DeVries Dairy, LLC v. White Eagle Coop. Ass'n*, 974 N.E.2d 1194 (Ohio 2012) (Ohio has "never recognized a claim under 4 Restatement 2d of Torts, Section 876 (1979)" for tortious acts in concert); *Sacksteder v. Senney*, No. 24993, 2012 Ohio App. LEXIS 3914, at *42–44 (Ohio Ct. App. Sept. 28, 2012) (affirming dismissal of claims that defendants "participated in" another defendant's breach of fiduciary duty and explaining that under *DeVries Dairy*, "persons 'participating' in the direct actor's breach of fiduciary duty are not liable"); *Antioch Co. Litig. Trust v. Morgan*, 2012 U.S. Dist. LEXIS 182997, at *7–10 (S.D. Ohio Dec. 31, 2012) (noting dismissal of claims based on alleged participation in primary actor's tortious conduct).

## III.   Conclusion.

Plaintiff aggressively litigated breach of fiduciary duty claims against the majority shareholder and senior officer of Columbia, which claims primarily focused on allegedly

improper transfers to Pond.  She was afforded the opportunity to present evidence and argument purportedly supporting these claims to a jury of her peers.  The jury rejected her claims and, based on the jury's verdict, the Court entered final judgment against Plaintiff.  Her attempt to re-litigate breach of fiduciary duty claims against another officer of Columbia, based on the same challenged transactions, is improper as a matter of law.  It offends fundamental principles of finality and fairness on which our system of justice depends.  For all of these reasons, Pond respectfully requests that the Court dismiss Plaintiff's New Complaint with prejudice to refiling.

Respectfully submitted,

/s/ Scott A. Kane
Scott A. Kane (0068839)
Colter Paulson (0081903)
Jennifer Dollard-Smith (0093624)
SQUIRE PATTON BOGGS (US) LLP
201 East Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 361-1240
Fax:  (513) 361-1201
scott.kane@squirepb.com
colter.paulson@squirepb.com
jennifer.dollard-smith@squirepb.com

*Attorneys for Pond Realty Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 30, 2019 a true and correct copy of the foregoing was

filed with the Court's ECF system, which transmitted a copy to all counsel of record.


s/ Scott A. Kane _____