# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MARIE JOSEPH, Derivatively on Behalf of Nominal Defendant COLUMBIA OLDSMOBILE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>POND REALTY COMPANY, *et al.*<br><br>Defendants,<br><br>and<br><br>COLUMBIA OLDSMOBILE COMPANY,<br><br>Nominal Defendant. | Case No. 1:19-cv-00641<br><br>Judge Timothy S. Black<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO POND REALTY COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

Plaintiff Marie Joseph ("Plaintiff"), derivatively on behalf of Columbia Oldsmobile Company, by and through counsel, respectfully submits her Memorandum in Opposition to Pond Realty Company's Motion to Dismiss for Failure to State a Claim. For the reasons discussed herein, Pond Realty Company's ("Pond") Motion to Dismiss for Failure to State a Claim (the "Motion") must be denied, as it is premised on legal and factual assertions that are inaccurate and/or otherwise insufficient to warrant dismissal of Plaintiff's Verified Shareholder Derivative Complaint (the "Complaint").

**I.  Pond's Arguments Regarding Res Judicata Fail Because Pond Fails to Meet Multiple Elements of Res Judicata**

Pond correctly states in its Motion that res judicata applies if all four of the following elements are present: (1) "a final decision on the merits in the first action by a court of competent jurisdiction"; (2) "the second action involves the same parties, or their privies, as the first"; (3)

"the second action raises an issue actually litigated or which should have been litigated in the first action"; and (4) "an identity of the causes of action." *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).

Though Pond asserts in its Motion that all four of those elements are met and dismissal of Plaintiff's Complaint is thus proper, that assertion is incorrect as a matter of law. For the reasons discussed below, Pond's Motion on this issue must be denied, as Pond fails to establish multiple elements of its res judicata defense.

### A. *A final decision on the merits*

Plaintiff does not dispute that there was a decision on the merits in *Marie Joseph v. Ronald Joseph*, Case No. 1:16-cv-00465 (the "*Joseph v. Joseph* Case"), inasmuch as the Court entered the Judgment for Defendant and Against Plaintiff on March 18, 2019 based upon the jury verdict rendered in that case.[1] See *Joseph v. Joseph* Case Doc. 232.[2] As discussed in more detail below, however, the substance of the jury verdict that was the basis of the Court's Judgment for Defendant and Against Plaintiff is much narrower than Pond asserts to the Court in Pond's Motion.

### B. *Any privity requirement is not satisfied for res judicata purposes*

To successfully assert a res judicata defense, it must be shown that "the second action involves the same parties, or their privies, as the first." *Sanders Confectionery Prod., Inc.*, 973 F.2d at 480. It is beyond dispute that none of Pond, Ned Van Emon ("Van Emon") or Columbia Oldsmobile Company ("Columbia") were parties to the *Joseph v. Joseph* Case. Nevertheless,

---

[1] Plaintiff notes that there has *not* been a final judgment entered on her claim for access to corporate records, and that claim remains pending before the Court in the *Joseph v. Joseph* Case as to Plaintiff's October 2015 corporate records request. Furthermore, the judgment entered by the Court on the jury verdict is currently on appeal to the United States Sixth Circuit Court of Appeals. Thus, without conceding that the judgment in the *Joseph v. Joseph* Case constitutes a "final judgment" for res judicata purposes, Plaintiff's contentions in this memorandum assume, *arguendo,* that the Court itself considers the judgment in the *Joseph v. Joseph* Case final.

[2] To avoid confusion, Plaintiff will cite to any document filed with the Court in the *Joseph v. Joseph* Case with a "*Joseph v. Joseph* Case Doc. [#]" citation. Any citation to a document filed with the Court in this case will be cited to simply as "Doc. [#]."

Pond asserts that "any privity requirement" is satisfied for res judicata purposes because (i) "Plaintiff is in privity with Columbia with respect to claims she already litigated on its behalf," (ii) "[a]s a corporate officer of Columbia, Mr. Van Emon is in privity with both Columbia and Columbia's president, Ron Joseph," and (iii) "Pond Realty is in privity with its officer, Ron Joseph." Doc. 7, PageID 41-43. These arguments must be rejected, as none of the parties in *this* case are in privity with either Ron or Plaintiff in either's capacity as a party to the *Joseph v. Joseph* Case.

> i. *Marie, in her capacity as plaintiff in the Joseph v. Joseph Case, is not in privity with Columbia for purposes of Pond's asserted res judicata defense.*

As the Court knows, the *Joseph v. Joseph* Case was *not* a derivative action brought on behalf of Columbia. That case was a direct action brought by Plaintiff in her capacity as a minority and controlling shareholder pursuant to *Crosby v. Beam*, 548 N.E.2d 217 (1989), and its progeny. That direct action was brought against Ron in his capacity as a majority and controlling shareholder of Columbia. **Columbia is not now, and never was, a party to the *Joseph v. Joseph* Case.** The Court acknowledged as much when it stated in the *Joseph v. Joseph* Case that "the nature of Marie's claim is that Ron, Sr. used his status as the controlling shareholder of Columbia, a close corporation, to appropriate certain opportunities for himself and his Sons and to transfer money to other entities in which Ron Sr. and his Sons—but not Marie—had an interest," that "Marie [was] entitled to bring [those] claims for breach of fiduciary duty directly," and that "[r]equiring Marie to bring [the claims in the *Joseph v. Joseph* Case] derivatively would have the undesirable result of placing any recovery under the control of Ron, Sr., the person responsible for the (alleged) wrongdoing in the first instance." *Joseph v. Joseph* Case Doc. 161, PageID 11374. As a result, the Court denied Ron's motion for summary judgment on the issue of standing, finding that Plaintiff's direct action against Ron was proper. *Id*.

3

Pond ignores the Court's rulings in the *Joseph v. Joseph* Case on this issue, instead asserting that Plaintiff is in privity with Columbia "with respect to claims that she has already litigated *on its behalf*." Doc. 7, PageID 42-43 (emphasis added).[3] Such an assertion is materially inaccurate and contradicts both the pleadings in the *Joseph v. Joseph* Case and the Court's plain rulings in the *Joseph v. Joseph* Case, which found that Plaintiff brought the claims in that case against Ron *directly* on her own behalf as opposed to *derivatively* on Columbia's behalf. For purposes of this Motion, the nature of Plaintiff's claims in the *Joseph v. Joseph* Case and the Court's own rulings in that case establish that Plaintiff did not bring *any* claims on Columbia's behalf, and Plaintiff is thus not in privity with Columbia for purposes of Pond's asserted res judicata defense.

        ii.        *For purposes of Pond's asserted res judicata defense, Pond is not in privity with Ron in his capacity as a defendant in the Joseph v. Joseph Case.*

Pond's argument that it is in privity with Ron for purposes of applying res judicata to Plaintiff's claims in this case is equally unavailing. As discussed above, in the *Joseph v. Joseph* Case, Ron was sued in his capacity as a majority and controlling shareholder of Columbia. *See Joseph v. Joseph* Case Doc. 161, PageID 11374. Generally, "[c]orporations 'are treated as entities separate from their officers, directors, and shareholders for purposes of preclusion just as for other purposes"—however, "[o]ne exception to this rule is that 'directors, officers and shareholders may be in privity with a corporation and thereby assert a res judicata defense if they are named defendants ***solely in their capacity*** as directors, officers, and shareholders" (emphasis added). *In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*, 166 F. Supp. 3d 948, 963 (W.D. Tenn. 2014) (citing *Dorchen/Martin Assocs., Inc. v. Brook of Boyne City, Inc.*, No. 13-1058, 2013 WL

---

[3] Lead counsel for Pond in this case are two of the attorneys who were lead counsel for Ron's Sons in the *Joseph v. Joseph* Case. The reality that Marie's claims in the *Joseph v. Joseph* Case were not derivative in nature is well known to them.

4

2418175, at *8 (E.D. Mich. June 3, 2013)); *see also United States v. Gurley*, 43 F.3d 1188, 1197 (8th Cir. 1994).

In the *Joseph v. Joseph* Case, Ron was *not* sued in his capacity as a shareholder of Pond, as an officer of Pond, or as a director of Pond—he was sued in his capacity as a majority and controlling shareholder of **<u>Columbia</u>**. Pond's asserted res judicata defense must be denied, as Pond was not in privity with Ron in his capacity as a defendant in the *Joseph v. Joseph* Case.

Further undercutting Pond's asserted res judicata defense is Ron's own testimony at the jury trial held in the *Joseph v. Joseph* Case. Though Pond asserts that its "interests were closely aligned with Ron Joseph in the prior litigation . . . and [it was] fairly represented in the prior case," Ron's testimony at trial established that he knew incredibly little about Pond, let alone enough to "fairly represent" Pond in the *Joseph v. Joseph* Case. Ron testified at trial, among other things, (i) that he did not know "the extent to which [Pond's] obligations are" (*Joseph v. Joseph* Case Doc. 199, Tr. of Trial Day 2, p. 2-35 – 2-36); (ii) that he did not know (a) who the president of Pond was, or (b) whether Pond actually has a corporate address (*id.,* pp. 2-37 – 2-38); (iii) that he did not know whether Pond has *any* business interactions with Columbia or its subsidiaries (*id.*); and (iv) that he did not know whether he received any compensation from Pond (*id.*, p. 2-68). These statements emphasized Ron's lack of involvement with Pond (refusing even to acknowledge that he was the President of Pond). Those deliberate, clear and unambiguous statements disclaiming any meaningful role in Pond or Pond's affairs were used by Ron to escape liability in the *Joseph v. Joseph* Case: it is beyond disingenuous for Pond to "do a 180" in this case and assert that Ron was somehow litigating in the *Joseph v. Joseph* Case as President of Pond. Contrary to Pond's assertion that its "interests were closely aligned with" and "fairly represented" by Ron in the

*Joseph v. Joseph* Case, Ron's trial testimony demonstrates that he knew so little about Pond that he could not have possibly represented Pond's interests in the *Joseph v. Joseph* Case.

The Court need not reach the issue of whether Ron's prior testimony is inconsistent with the defense asserted here, inasmuch as it is dispositive of the res judicata defense that Ron was not sued in the *Joseph v. Joseph* Case in his capacity as an officer of Pond. Nevertheless, if the Court is somehow otherwise inclined to look past the capacity in which Ron was actually sued in the *Joseph v. Joseph* Case, Ron's inconsistent testimony at trial provides an independently sufficient basis for finding that Pond was *not* in privity with Ron for purposes of the *Joseph v. Joseph* Case, thereby requiring that Pond's Motion be denied on that basis as well.

       iii.    <u>For purposes of Pond's asserted res judicata defense, Pond is not in privity with Van Emon.</u>

Finally, Pond asserts that Van Emon is somehow in privity with Ron, and that Van Emon's interests were "closely aligned with Ron Joseph in the prior litigation" and were "fairly represented" by Ron in the *Joseph v. Joseph* Case.[4] This assertion is also baseless.

Van Emon cannot be considered in privity with Ron for purposes of asserting res judicata in this case. In the *Joseph v. Joseph* Case, Ron was sued in his capacity as a majority and controlling shareholder of Columbia. In its Motion, Pond does not cite to any case law that would support its assertion that an officer of a corporation is in privity with that corporation's majority and controlling shareholder when the majority and controlling shareholder was a party to a prior action *in that capacity*. Thus, Van Emon was not "closely aligned with Ron Joseph in the prior litigation," nor were his interests "fairly represented" by Ron in the *Joseph v. Joseph* Case.

---

[4] Though Pond also asserts that Van Emon is in privity with Columbia and Plaintiff disputes that assertion, whether Van Emon is in privity with Columbia is irrelevant to Pond's Motion, as Columbia was not a party to the *Joseph v. Joseph* Case.

"Privity pertains to '[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter[.]'" *Martin v. JBS Techs.*, LLC, 443 F. Supp. 2d 962, 966 (S.D. Ohio 2006) (internal citations omitted). Here, none of Van Emon, Pond or Columbia were even parties to the *Joseph v. Joseph* Case. Furthermore, neither Van Emon nor Pond were in privity with Ron in the capacity in which he was actually sued in the *Joseph v. Joseph* Case (*i.e.,* as majority and controlling shareholder). Nor is Columbia in privity with Plaintiff for purposes of the *Joseph v. Joseph* Case, inasmuch as she sued Ron directly in her individual capacity as a minority shareholder pursuant to *Crosby v. Beam* rather than as a derivative plaintiff on behalf of Columbia. Each of the foregoing points provides an independently sufficient basis for determining that Pond cannot meet the privity prong of the res judicata test. Thus, Pond fails to establish privity between the parties in *this* case and the parties to the *Joseph v. Joseph* Case, and that failure is fatal to the res judicata defense asserted by Pond in its Motion.

    C.    *The claims in this case were not asserted, nor could they have been asserted, in the Joseph v. Joseph Case*

Pond contends that the third element of its asserted res judicata defense is established because "[t]he claims in this lawsuit could have been (and were) asserted in Plaintiff's original lawsuit." Doc. 7, PageID 43. Pond fails on this element as well, as Plaintiff did not—and, indeed, could not—assert any claims against Pond or Van Emon in the *Joseph v. Joseph* Case.

    i.    <u>The claims in this case were not asserted in the Joseph v. Joseph Case.</u>

It is true that some (though, as discussed below, certainly not all) of the transactions that are relevant to the claims in this case were also relevant to some of the claims in the *Joseph v. Joseph* Case. Nevertheless, it is indisputable that Marie did not bring any claims against Pond or Van Emon in the *Joseph v. Joseph* Case, and certainly none based on their respective roles in the transactions.

7

On the contrary, this case arises in part out of testimony elicited at trial that Ron (the only party to the *Joseph v. Joseph* Case besides Plaintiff) asserting that he was *not* involved in those transactions, but instead delegated the authority to cause Columbia to engage in those transactions to Columbia's chief financial officers ("CFOs"), including Van Emon. That testimony diverted potential liability for the transactions away from Ron (who could be sued directly pursuant to *Crosby v. Beam*) and toward others (including Pond and Van Emon) who were not parties to the *Joseph v. Joseph* Case and who would need to be sued derivatively. The claims asserted in this case are thus separate and distinct from the claims asserted in the *Joseph v. Joseph* Case, both as to the identity of the defendants and the nature of the claims.

During the jury trial held in the *Joseph v. Joseph* Case, multiple individuals testified that Ron had no involvement in the transactions from Columbia to Pond, but instead delegated his authority to cause Columbia to engage in those transactions to people like the CFOs. Van Emon himself confirmed as much in the following exchange at trial:

> **Q:** Okay. When you served as CFO, to what extent did Ron Joseph entrust the accounting, bookkeeping and financial affairs to you?
>
> **A:** He entrusted us, me, to do all of that. I mean, as he did with all the managers. He entrusted them to run their stores. He entrusted me to run the – run the business in the office. So that's what we did.
>
> **Q:** And were you authorized, you believe, to undertake all necessary activities in connection with those –
>
> **A:** Yes.
>
> **Q:** -- those duties?

Tr. of Trial Day 8, Doc. 213, p. 8-45:24 – 8-46:9. Others similarly testified that Ron delegated authority over Columbia's finances to Columbia's CFOs, including Van Emon. *See*, *e.g.*, Doc. 214, Tr. of Trial Day 9, p. 9-8. While Plaintiff does not necessarily believe that the testimony

8

elicited during the jury trial in the *Joseph v. Joseph* Case is true, the consequence of that and other testimony elicited on Ron's behalf at the *Joseph v. Joseph* trial is clear: the transactions transferring money or other things of value to Pond *did* occur, Pond received the benefit of those transactions, and Van Emon as Columbia's CFO caused Columbia to enter into them.

In short, Ron's defense to the direct claims that were actually asserted against Ron in the *Joseph v. Joseph* Case diverted responsibility for all transactions between Columbia and Pond away from himself, as the majority and controlling shareholder of Columbia who was being sued directly by Marie pursuant to *Crosby v. Beam*. Now, as Marie pursues (i) separate and distinct derivative claims rather than direct claims (ii) against individual and entities who were never parties to the *Joseph v. Joseph* Case and who openly acknowledged their involvement in and at least partial responsibility for those transactions at trial, Pond asks this Court to ignore those differences and equate the claims. But that plea must be in vain, because the nature of the claims in the *Joseph v. Joseph* Case was not the same (direct, as distinct from derivative) and the defendants are not the same (Ron in his capacity as majority and controlling shareholder of Columbia, as distinct from Pond and Van Emon).

Indeed, the claims in this lawsuit are consistent with the substance of the jury's verdict in the *Joseph v. Joseph* Case, especially given that Ron's defense at trial emphasized that someone other than Ron authorized and implemented the transactions between Columbia and Pond. As the completed jury interrogatories make clear, the jury found in regard to the transactions involving the U.S. Bank Money Center (a bank account held in Pond's name) and in regard to the millions of dollars in so-called "management fees" paid by Columbia to Pond, either (i) Plaintiff did not prove by a preponderance of the evidence that *Ron* "caused Columbia" to engage in those transactions, or (ii) Plaintiff did not prove by a preponderance of the evidence that *Ron* had a

material pecuniary interest in the transactions that reasonably would be expected to affect his judgment in a manner adverse to Columbia. *See Joseph v. Joseph* Case Doc. 210, PageID 15712, 15716. By the very nature of the *Joseph v. Joseph* Case, the jury's findings were about *Ron's* direct responsibility to *Marie* as a minority shareholder; the jury made no findings about the responsibility of *Pond* to *Columbia* or about the responsibility of *Van Emon* to *Columbia*. The jury's determination that Ron did not cause Columbia to enter into those transactions cannot and does not change the reality that somebody did cause Columbia to do so.

Faced with the incontrovertible reality that the jury in the *Joseph v. Joseph* Case did not adjudicate any derivative claims asserted on behalf of Columbia or any claims asserted against Pond (or Van Emon), Pond takes refuge in unsupportable suggestions that the jury in the *Joseph v. Joseph* Case has already found that *all* of the transactions in which Columbia sent money or other things of value to Pond were fair. The answers to the jury interrogatories did indicate that the jury found that one limited category of transactions was fair, but the jury never reached the issue of fairness as to the vast bulk of the transactions.[5] But the answers to the jury interrogatories—while finding that *Ron* did not breach the fiduciary duties *he* owed to Plaintiff in his capacity as a majority and controlling shareholder of Columbia—do *not* establish that all of the transactions themselves between Columbia and Pond were fair or otherwise proper. Instead, the jury verdict gives rise to the factual issues that Marie raises in her derivative complaint in this case about who (else) authorized and implemented the transactions between Columbia and Pond.

---

[5] The jury did find that Ron proved by a preponderance of the evidence that certain "other transfers from Columbia and its subsidiaries to Pond Realty Company" were "fair to Columbia." *See Joseph v. Joseph* Case Doc. 210, PageID 15719. That finding and other aspects of the jury interrogatories are among the issues Plaintiff intends to include in her appeal to the United States Circuit Court for the Sixth Circuit. But there was no such finding as to the vast majority of the transactions, given the jury findings (before reaching the "fairness" question in various jury interrogatories) that Ron did not caused Columbia to engage in the transactions or that Ron himself did not have a material pecuniary interest in the transactions that reasonably would be expected to affect his judgment in a manner adverse to Columbia.

The derivative claims asserted on behalf of Columbia in this lawsuit are separate and distinct from the direct *Crosby v. Beam* claims asserted by Marie in the *Joseph v. Joseph* Case. The claims themselves are of a different nature and they are asserted against defendants who were not parties to the *Joseph v. Joseph* Case. Pond therefore fails to establish the third prong of its res judicata defense as well.

> ii. *Plaintiff could not have brought the claims in this case in the Joseph v. Joseph Case.*

Pond argues in its Motion that "even if Plaintiff asserts that her new claims . . . are somehow different, they still are precluded" because the claims in this case, Pond contends, "should have been" brought in the *Joseph v. Joseph* Case. But Plaintiff could not have possibly brought the claims included in this case in the *Joseph v. Joseph* Case, and Pond's arguments to the contrary should be rejected.

As discussed above, the *Joseph v. Joseph* Case was a direct action brought pursuant to *Crosby v. Beam* and its progeny by Plaintiff, in her capacity as a minority shareholder of Columbia, against Ron in his capacity as a majority and controlling shareholder of Columbia. The Supreme Court of Ohio held in *Crosby v. Beam* that "claims of a breach of fiduciary duty alleged by minority shareholders ***against shareholders who control a majority of shares in a close corporation***, and used their control to deprive minority shareholders of the benefits of their investment, may be brought as individual or direct actions and are not subject to the provisions of Civ.R. 23.1" (emphasis added). 548 NE.2d at 221.

A direct action brought by a minority shareholder pursuant to *Crosby v. Beam* can *only* be brought against "shareholders who control a majority of shares in a close corporation." Indeed, a *Crosby v. Beam* direct action cannot be brought (i) against officers or directors of the corporation who are not either majority or controlling shareholders (as this Court itself determined in the

11

*Joseph v. Joseph* Case), or (ii) against individuals or entities who are not shareholders of the corporation at all. Plaintiff, who was suing in her individual capacity in the *Joseph v. Joseph* Case, could not assert *any* claims against Pond or Van Emon in that case, because neither Pond nor Van Emon was a majority or controlling shareholders who could properly be sued in a direct action brought pursuant to *Crosby v. Beam*.[6] Plaintiff therefore could not have brought claims against Van Emon and Pond in the *Joseph v. Joseph* Case, contrary to Pond's assertions that she either did or could have brought such claims. *See Hobart Corp. v. Dayton Power & Light Co.*, 997 F. Supp. 2d 835, 849 (S.D. Ohio 2014) (citing *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998)) ("*res judicata* will not attach if the claim asserted in the second suit could not have been asserted in the first").

Furthermore, many of the transactions that are the subject of *this* case were not even in existence at the time (i) when Plaintiff's complaint in the *Joseph v. Joseph* Case was filed on April 12, 2016, and/or (ii) when the Court entered its Judgment for Defendant and Against Plaintiff on March 18, 2019.[7] Courts have held that claims based on "transactions" or other events that occurred either after the initiation of the prior litigation or after the entry of judgment in the prior litigation cannot be defeated by a res judicata defense asserted in a later case. *See, e.g., Tolliver v. Liberty Mut. Fire Ins. Co.*, No. 2:06-CV-904, 2010 WL 148159, at *6 (S.D. Ohio Jan. 11, 2010)

---

[6] Additionally, Pond is owned by Ron's sons, Gregory Joseph, George Joseph, Richard Joseph, and Ronald Joseph, Jr. ("Ron's Sons"). The Court held in the *Joseph v. Joseph* Case that any claims to be asserted against Ron's Sons in that case would have to be "derivative in nature." *Joseph v. Joseph* Case Doc. 160, PageID 11370.

[7] Pond incorrectly asserts in its Motion that the *Joseph v. Joseph* Case covers "claims until judgment was entered in March 2019." Doc. 7, PageID 45-46. That is not accurate. First, the jury rendered its verdict in the *Joseph v. Joseph* Case in October of 2018, so any transactions that occurred after the jury rendered its verdict could not possibly have been the subject of that verdict. Second, the Court limited Plaintiff's claims against Ron in the *Joseph v. Joseph* Case to the period April 12, 2012 and forward based on statute of limitations grounds (*Joseph v. Joseph* Case Doc. 99), but the Plaintiff is not limited to that timeframe in this case. Finally, as Plaintiff's counsel explained at the jury trial held in the *Joseph v. Joseph* Case, Plaintiff only sought at trial damages relating to transactions that occurred in the years 2012-2016 (*i.e.,* transactions that occurred between the statute of limitations date established by the Court and when Marie filed her last pleading). *See* Tr.of Trial Day 7, p. 7-82. Thus, the scope of Plaintiff's claims in the *Joseph v. Joseph* Case is far more limited that Pond states in its motion.

(internal citations omitted) (stating that "[t]he Sixth Circuit has explicitly rejected the argument that claims based on a defendant's conduct after filing of the initial action could have been litigated because the plaintiff could have amended the complaint" and citing cases stating the same); *see also Bob Tatone Ford, Inc. v. Ford Motor Co.*, 140 F. Supp. 2d 817, 824 (S.D. Ohio 2000) ("*res judicata* does not prevent a party from asserting claims in a subsequent lawsuit, based on events that occurred after judgment was entered in the prior litigation"). Thus, as to those transactions that were not included in the *temporal* scope of the claims asserted against Ron in the *Joseph v. Joseph* Case, any res judicata defense asserted by Pond is inapplicable (even if the defense otherwise had merit, which it does not).

> D. *The causes of action in this case are not identical to the causes of action asserted by Plaintiff in the Joseph v. Joseph Case*

In support of its assertion that the final element of its res judicata defense is met, Pond repeats its contentions that the operative facts underlying the claims in this case are the same as the facts underlying the claims asserted by Plaintiff in the *Joseph v. Joseph* Case. As discussed above, that is simply not accurate. Many of the material facts underlying this case are distinct from the facts from which the *Joseph v. Joseph* Case arose. Simply put, this case is against Pond and Van Emon (based on what *they* did), not against Ron (based on what *he* did). Moreover, the claims asserted here are brought derivatively on behalf of Columbia, while the claims asserted in the *Joseph v. Joseph* Case were asserted by Marie individually against Ron individually pursuant to *Crosby v. Beam.* In addition, since neither Van Emon nor Pond were parties to the *Joseph v. Joseph* Case nor in privity with any party in that case, the causes of action asserted against them in *this* case could not possibly be the same as the causes of actions asserted against *Ron* in the *Joseph v. Joseph* Case. Thus, as more fully discussed above, the causes of action in this case are

13

distinct from the causes of action in the *Joseph v. Joseph* Case, and Pond's Motion fails to establish the fourth prong of the res judicata defense as well.

Pond's assertion of a res judicata defense fails as a matter of law. Pond needs to establish each of four factors, and it cannot establish at least three of them. Neither Van Emon nor Pond were parties to the *Joseph v. Joseph* Case, and neither of the Defendants in this case are in privity with Ron in his capacity as a defendant in the prior action (wherein he was sued in his capacity as a majority and controlling shareholder of Columbia). Additionally, Plaintiff, as an individual direct claimant under *Crosby v. Beam*, did not assert in the *Joseph v. Joseph* Case—and could not assert in that case—the derivative claims against non-shareholders that are at issue in this case. Finally, many of the operative facts underlying the claims asserted by Plaintiff in this case are materially distinct from the facts underlying the claims asserted in the *Joseph v. Joseph* Case, and the causes of action asserted in this case are therefore factually distinct as well. Each of these failures in Pond's res judicata defense are independently sufficient bases for denying Pond's Motion; severally, and *a fortiori* when considered in conjunction with each other, they require the denial of Pond's asserted res judicata defense.

**II.     This Case is Not an Instance of Claim-Splitting or Duplicative Litigation**

Pond's arguments regarding the alleged "impermissible claim-splitting" purportedly engaged in by Plaintiff are as baseless as its res judicata arguments. This aspect of Pond's Motion must also be denied.

"When the pendency of such a suit is set up to defeat another, the case must be the same. ***There must be the same parties, or, at least, such as represent the same interests***; there must be ***the same rights asserted and the same relief prayed for***; the relief ***must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same***" (emphasis

14

added). *The Haytian Republic,* 154 U.S. 118, 124 (1894). "Consistent with these criteria, more recent cases analyze claim-splitting as an aspect of res judicata." *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002). In *Hartsel Springs Ranch of Colorado, Inc.*, the Tenth Circuit held that "[t]he district court erred by applying the claim-splitting prohibition without requiring identity or privity between the parties." *Id*.

Pond's arguments regarding alleged "impermissible claim-splitting" fail for many of the same reasons its res judicata argument fails. Neither Pond nor Van Emon were parties to the *Joseph v. Joseph* Case. As discussed more fully above, neither Pond nor Van Emon were in privity with either party to the *Joseph v. Joseph* Case. The "rights asserted" and the "relief prayed for" in this case are distinct from the "rights asserted" and the "relief prayed for" in the *Joseph v. Joseph* Case. The facts underlying the two cases are materially and significantly distinct. Pond's argument that Plaintiff has engaged in "impermissible claim splitting" thus must be rejected. *See Evans v. Cincinnati Ins. Grp.*, No. 4:12-CV-00086-JHM, 2013 WL 2149848, at \*2 (W.D. Ky. May 16, 2013) (denying a motion to dismiss premised on claim splitting arguments because "[i]n the present case, the parties are not the same" and "the cases have different issues to be decided").

Further supporting the denial of Pond's Motion on this issue is the fact that Plaintiff *could not* have asserted claims against either Pond or Van Emon in the *Joseph v. Joseph* Case, which was a direct action brought pursuant to *Crosby v. Beam* and its progeny. Neither Pond nor Van Emon are or ever were shareholders of Columbia, let alone shareholders of Columbia who exercised control over Columbia to Plaintiff's detriment such that a *Crosby v. Beam* direct action against them would be proper. This indisputable reality is yet another basis for denying Pond's Motion on this issue. *See Wimmer v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. 1:15-CV-241, 2015 WL 5453058, at \*5 (S.D. Ohio Sept. 17, 2015); *Murray v. UBS Sec., LLC*, No. 14

CIV. 927 KPF, 2015 WL 769586, at *4 (S.D.N.Y. Feb. 24, 2015) ("[a]lthough the doctrine of duplicative suits is 'distinct' from that of claim preclusion . . . they share a related insight that a plaintiff cannot be precluded from litigating a claim on the basis of an earlier claim where, for factual or procedural reasons, he could not bring the later claim at the same time as the earlier claim").

### III. Pond's Assertions Regarding Judicial Estoppel Must Also Be Rejected

"Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990). "[B]efore the doctrine of judicial estoppel may be invoked, the prior argument must have been accepted by the court." *Id.* Though "[c]ourts have observed that '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle,'" the United States Supreme Court has identified at least three factors that "inform the decision whether to apply the [judicial estoppel] doctrine in the first place: First, a party's late position must be 'clearly inconsistent' with it earlier position . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled' . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (internal citations omitted).

Here, though Pond oddly asserts in its Motion that "[j]udicial estoppel is appropriate because Plaintiff successfully claimed in the prior action that her claims regarding Pond were

16

permissible *direct* claims, not purely *derivative* claims" (emphasis in original), the first *New Hampshire* element for a judicial estoppel defense is not met, as Plaintiff's position in this case (that she can assert derivative claims on behalf of Columbia against Pond and Van Emon) is *not* inconsistent with her position in the *Joseph v. Joseph* Case (that she could bring direct claims against Ron in his capacity as a majority and controlling shareholder of Columbia). Pond is correct that "Plaintiff previously argued that she was entitled to bring direct claims because as a minority shareholder, she was 'individually harmed' by *Ron Joseph's majority control of Columbia*" (emphasis added). That position is completely distinct from Plaintiff's current position that derivative claims on behalf of *Columbia* against *Pond* and *Van Emon* are proper.[8]

Plaintiff never asserted direct claims against Pond or Van Emon in the *Joseph v. Joseph* Case. Plaintiff never argued that any direct claims against Pond or Van Emon would be proper in the *Joseph v. Joseph* Case. Since no such claims or arguments were ever asserted or made by Plaintiff, no court has ever accepted any argument made by Plaintiff that is inconsistent with Plaintiff's current position that derivative claims against Pond and Van Emon are proper. That Plaintiff brought direct claims against *Ron* based on his conduct does not somehow bar her from asserting derivative claims on behalf of Columbia against *Pond* and *Van Emon*, particularly when such claims against Pond and Van Emon could not have been brought as a direct action in the first place. Pond's Motion on this issue must therefore also be denied.

### IV.  Plaintiff Has Stated a Claim Against Pond For, Among Other Things, Unjust Enrichment

In a last-ditch effort to have Plaintiff's Complaint dismissed, Pond asserts that (i) the Complaint fails "to contain factual allegations to make its claims plausible," and (ii) the "theory

---

[8] Pond's use of the phrase "claims regarding Pond" in its memorandum has the practical effect of improperly conflating claims against Ron that arise in part from transactions "regarding Pond" with claims *against* Pond. There were no claims asserted against Pond in the *Joseph v. Joseph* Case.

17

against Pond relies upon an aiding-and-abetting theory that has been rejected by Ohio courts." Doc. 7, PageID 49. Both of these arguments ignore the plain allegations of Plaintiff's Complaint. Plaintiff does not even allege that Pond aided or abetted a breach of fiduciary duty by anyone. Pond's motion and memorandum completely ignore the allegations of the derivative complaint that Pond has been unjustly enriched to the detriment of Columbia.

"To recover under a theory of unjust enrichment in Ohio, the following three elements are required: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment . . ." *Cowit v. CitiMortgage, Inc.*, No. 1:12-CV-869, 2014 WL 12749186, at *4 (S.D. Ohio June 2, 2014) (Black, J.) (internal citations omitted). "Under Ohio law, passive retention of a benefit where such retention is 'unconscionable' is enough to trigger liability." *Id*. (internal citations omitted).

The allegations in Plaintiff's complaint establish each of the three unjust enrichment elements enumerated by this Court in *Cowit*. First, Plaintiff's allegations establish that Columbia conferred a benefit upon Pond inasmuch as "Pond has received money or other things of value from Columbia through self-dealing transactions in which Columbia did not receive fair consideration." Complaint, Doc. 1, PageID 7, ¶ 44. *See also*, *e.g.*, *id.* at ¶¶ 46, 47, 77. As to the second element, Plaintiff alleges that Pond participated in the undisclosed and unauthorized self-dealing and unjustly received the benefits of those transactions. *See*, *e.g.*, *id*., ¶¶ 43-47, 77, 80; *see also Cowit*, 2014 WL 12749186 at *4-*5 ("Plaintiffs allege that in 41 of the sample cases, [the d]efendant completely failed to refund or credit the Refunded Court Costs to borrowers, and in 129 sample cases, the refund or credits were posted more than sixty days after Defendant received them . . . Taking these allegations as true, [the d]efendant knowingly received the benefit of

Plaintiffs' money permanently or for months on end without compensating [p]laintiffs"). Finally, Plaintiff's allegations satisfy the third element, as she alleges in the Complaint that Pond retaining the money in the circumstances presented by her allegations would be unjust because Columbia did not receive fair consideration in return. *See*, *e.g.*, Complaint, Doc. 1, ¶ 3 ("Pond received money or other things of value from Columbia Oldsmobile Company and its subsidiaries through self-dealing transactions in which Columbia Oldsmobile Company and its subsidiaries did not receive fair consideration"); *see also id.*, ¶¶ 44, 47. The allegations in Plaintiff's Complaint demonstrate that an unjust enrichment claim was sufficiently plead against Pond, contrary to Pond's assertion that the complaint fails "to contain factual allegations to make its claims plausible."

Pond's argument that "[t]he attempted claims against Pond depend on aiding and abetting theories not recognized by Ohio law" (Doc. 7, PageID 50) thus relies on something that is not even in Plaintiff's Complaint (any aiding or abetting allegations) and ignores the plain meaning of the allegations that *are* in Plaintiff's Complaint. Plaintiff has sufficiently pleaded a claim for unjust enrichment against Pond, and Plaintiff's Complaint does not assert or rely on a claim against Pond for aiding and abetting Van Emon's (or anyone else's) breach of fiduciary duty. Therefore, Pond's demand for dismissal on this point, like all of Pond's other arguments, must also be rejected.

## V. Conclusion

Pond's arguments as to its asserted defenses of res judicata, "impermissible claim-splitting," judicial estoppel and alleged failure to state a claim are all severely and fatally deficient for the reasons discussed above. Pond's Motion must therefore be denied.

Respectfully submitted,

 */s/ Kevin L. Murphy*
Kevin L. Murphy (#0021810)
J. Jeffrey Landen (#0018174)
MURPHY LANDEN JONES PLLC
2400 Chamber Center Drive, Suite 200
P.O. Box 17534
Fort Mitchell, KY 41017-0534
Telephone: (859) 578-3060
Fax: (859) 578-3061
kmurphy@MLJfirm.com
jlanden@MLJfirm.com
*Attorneys for Plaintiff Marie Joseph,*
*Derivatively on Behalf of*
*Columbia Oldsmobile Company*

**CERTIFICATE OF SERVICE**

I certify that on the 20th day of September, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

*/s/ Kevin L. Murphy*
Kevin L. Murphy