**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MARIE JOSEPH, | : | |
| | : | Case No.: 1:19-cv-00641-TSB |
| Plaintiff, | : | |
| | : | Judge: Timothy S. Black |
| vs. | : | |
| | : | **REPLY MEMORNADUM IN SUPPORT** |
| POND REALTY COMPANY, *et al.*, | : | **OF POND REALTY COMPANY'S** |
| | : | **MOTION TO DISMISS FOR FAILURE** |
| Defendants, | : | **TO STATE A CLAIM** |
| | : | |
| and | : | |
| | : | |
| COLUMBIA OLDSMOBILE COMPANY, | : | |
| | : | |
| Nominal Defendant. | : | |
| | : | |

The Opposition ("Opp.") by Plaintiff Marie Joseph ("Plaintiff") is most notable for what it *does not* dispute: that the complaint in this matter seeks to challenge transactions between Pond Realty Company ("Pond") and Columbia Oldsmobile Company ("Columbia") that Plaintiff litigated for several years, tried to a jury, and lost. Plaintiff argues that, nonetheless, she should be permitted to relitigate breach of fiduciary duty claims concerning the same transactions with Pond, with a demand for a new jury, because this complaint is asserted as a derivative action and because she switched out one officer of Columbia for another. Plaintiff's Opposition identifies no legal authority supporting this extraordinary demand for a "do over." And while Plaintiff repeatedly trumpets the derivative nature of her current complaint, her Opposition completely ignores the specific authority in Pond's Motion to Dismiss ("Mot.") regarding application of res judicata in the context of close corporations. For these and the other reasons discussed below, Plaintiff's new complaint is deficient as a matter of law and should be dismissed with prejudice to refiling.

I. **Plaintiff's New Complaint is Barred by Res Judicata.**

A. **Plaintiff Cannot Repeat her Prior Claim as a Derivative Action.**

Plaintiff repeatedly argues that she is entitled to relitigate the challenged transactions between Columbia and Pond because her current complaint is asserted derivatively and her prior complaint was asserted directly. Plaintiff makes this conclusory assertion over and over again throughout the Opposition. (Opp. at 3, 4, 5, 7, 8, 9, 10, 11, 12, 14, 15, 17). Never once does the Opposition offer any legal authority supporting that conclusion.

Pond's Motion set forth specific authority that a closely held corporation is bound by the results of shareholder litigation for res judicata purposes. (Mot. at 10-11); *see, e.g., Joe's Pizza v. Aetna Life & Cas. Co.*, 236 Conn. 863, 869 (1996) (holding that "the interests of the shareholders and the closely held corporation itself coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.") (citing 2 Restatement (Second) of Judgments § 59); *Aetna Casualty & Surety Co. v. Kerr-McGee Chemical Corp.*, 875 F.2d 1252, 1259 (7th Cir. 1989) (holding that "judgment in an action brought by a shareholder of a closely held corporation is binding on the corporation in later litigation")). Plaintiff's Opposition fails to address this authority in any way and therefore concedes it. *E.g.*, *Cunningham v. Tenn. Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded") (citations omitted); *Navigators Specialty Ins. Co. v. Guild Assocs.*, 2016 U.S. Dist. LEXIS 163484, at *31 (S.D. Ohio Nov. 28, 2016) (noting that "[a] party waives opposition to an argument by failing to address it in her responsive brief").

Even absent the specific authority cited by Pond concerning close corporations, res judicata would still apply to bar Plaintiff's repeated claims because privity and an identity of

desired results exists between the defendants to this suit and the defendant in the prior claims tried to verdict.

### B. Plaintiff Fails to Establish Divergent Interests or Lack of Privity.

In the Sixth Circuit, there is no rigid requirement of privity or exact mutuality of parties in order to apply defensive claim preclusion. All that is required is an "identity of desired result" or that the later party was "closely aligned" with the party in the prior proceeding. *See United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 415–16 (6th Cir. 2016); *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1111 (6th Cir. 1981)). This controlling authority was detailed in Pond's Motion. (Mot. at 9-10). Plaintiff's Opposition did not address it.

Instead, Plaintiff offers misguided arguments about the "capacity" in which a party is allegedly sued. (Opp. p. 4-5). These arguments are unsupported by any legal authority that would prevent application of res judicata, particularly in the close corporation context.[1] Nor could they be supported in light of the authority discussed above and in the Motion that res judicata merely requires an identity of required result or alignment with the interests of the prior party. Plaintiff's conclusory arguments regarding "capacity" imagine some formulaic requirement that the Sixth Circuit has held does not exist where the parties' interests are substantively aligned. Plaintiff previously sued Ron Joseph, Sr. for alleged breaches of fiduciary

---

[1] Plaintiff's contention now that her prior claims against Ron Joseph, Sr. were strictly limited to a shareholder "capacity" is not consistent with her allegations throughout the litigation that Ron owed duties an officer of Columbia. (Mot. at 1-2; *see also* 2016 Compl., Dkt. 1 [all docket references are to Case No. 1:16-cv-00465 unless otherwise noted] at ¶ 19 (alleging that Ron while "the chief officer of Columbia, and without Marie's knowledge, implement[ed] a plan. . . ."), ¶ 33 ("As the executive officer of a family business, Ron exercised authority . . . "), ¶ 59 ("Ron was trusted to serve the family and shareholders as Columbia's chief officer . . . and he owed fiduciary duties to Marie.")); (Pls. Memo. in Support of Mot. To Compel filed Oct. 30, 2017, at 6 ("the President and Chief Executive Officer of Columbia is seizing a corporate opportunity"); 7 ("As President, Ron has breached every duty a majority shareholder and an officer owes to a company with respect to these transactions")). These contentions by Plaintiff continued at trial. (*E.g.*, Dkt 200, Tr. Trans. at 25:12–15 (cross-examining Ron, Q: "As a majority shareholder and an officer of Columbia, do you have, in your opinion, duties to make certain that finances are being well guarded?" A: "Yes, sir.")). (Dkt 220, Tr. Trans. at 71:16–18 (delivering Plaintiff's closing argument and asking, "[c]an you imagine what it would be like if everybody that's in a position of power, majority shareholders, presidents of companies, can just simply deny liability and get away with it?"); *see also, infra*, p. 4).

duties regarding purportedly improper transactions with Pond. Plaintiff now seeks to sue Ned Van Emon and Pond (including for Ned Van Emon's alleged breaches of fiduciary duties and Pond's alleged participation in the breaches) regarding *the same* purportedly improper transactions with Pond. There is an identity of desired result and a close alignment of interests between the current defendants and the prior defendant in defending the same claims regarding the same transactions.

Plaintiff specifically argued that Ron Joseph, Sr. was representing the interests of Pond as its President, which Plaintiff maintained was improper because of his officer and shareholder position with Columbia. (Dkt 189, Tr. Trans. at 10:2–13 ("All of these schemes were used to get money out of Columbia. . . How is he able to do this? Well, as I indicated, he's the controlling shareholder and president of Columbia. . . . But he's also the president of Pond. So he's on both sides of the deal.")); (Dkt 203, Tr. Trans. at 28:7–11 (cross-examining L. Rouse on management fees, Q: "And so Ron at the time you were setting this up was the president of Columbia, right?" A: "That's correct." Q: "And Ron was also the president of Pond; right?" A:" I believe so.")); (Dkt 213, Tr. Trans. at 145:12–17 (crossing N. Van Emon regarding transactions with Pond, Q: "And would you agree that Ron had duties to fulfill as president of Columbia?" A: "Yes." Q: "And that also would be true whether Pond existed or not; yes?" A: "That's correct.")).

Plaintiff also argues that Ron Joseph, Sr. could not have "represented Pond's interests" because, according to Plaintiff, he lacked sufficient knowledge. (*See* Opp. at 5-6). But Plaintiff's actual contention at trial was that Ron Joseph, Sr. was serving the interests of Pond as its President and that he was on "both sides" of the transactions between Columbia and Pond. (*E.g.*, Dkt 189, Tr. Trans. at 10:2–13). In any event, Plaintiff identifies no authority for the proposition that res judicata depends on the details of a witness's testimony. Plaintiff seems to

be confusing claim preclusion (res judicata) and issue preclusion (collateral estoppel). In any event, the relevant inquiry is not what Ron Joseph, Sr. testified, it is whether—with respect to the breach of fiduciary duty claims that Plaintiff tried against him to verdict—there is an identity of desired results or close alignment with the defendants in the current action. There clearly is.

Both Ron Joseph, Sr. in the prior action and defendants in the current action contend that the management fees and other transactions were appropriate, fair, and reasonable. The Court need not look beyond this fundamental alignment of interest for purposes of claim preclusion. If it did, it would conclude that Ron's defense had both an identity of desired results and an alignment of interest with current defendants in asserting the fairness of transactions between Columbia and Pond. (*See* Dkt 231, Order Denying Motion for Entry of Judgment, at 9 (observing that Plaintiff "learned during depositions that the management fees were set a long time ago by Lou Rouse (in consultation with Ned Van Emon), that they were set up based on industry standards, and that they did not change from the original structure and remained consistent year-after-year."), at 10 ("Richard Joseph and numerous other witnesses testified" about the "actual services rendered" by Pond to Columbia), at 3 ("as to payments made to Pond Realty (other than management fees), Linda May testified that all of these payments were for goods and services and were fair to Columbia")). Ron Joseph represented Pond's interests at trial by demonstrating that "neither Plaintiff nor Columbia were harmed by the transactions in any way, and that no misconduct or wrongdoing occurred. **Upon the evidence and testimony adduced at trial, the jury agreed with Defendant."** (*Id*. at 10–11, emphasis added).

Mr. Van Emon testified as to the nature and fairness of the transactions between Columbia and Pond. (Dkt 213, Trial Tr. at 49:21–52:15 (discussing how management fee formula was set up under industry standard); 53:13–16 (stating that a CPA firm would calculate

the management fees annually); 61:24–66:25 (describing the services provided in exchange for management fees, and the IRS audit of same). So did the owners of Pond. (*See, e.g.,* Dkt 221, Trial Tr. at 48:11–54:7 (George Joseph testifying about the extensive benefits received by Columbia for the management fees)). Plaintiff's contentions about Ron Joseph, Sr.'s limited knowledge are puzzling because that means his defense of the prior case would depend more on the involvement and testimony of Mr. Van Emon and the owners of Pond. That establishes even *more* identity of desired result and alignment of interests, not less. Regardless of degree, there can be no reasonable dispute that there is a fundamental alignment of desired result and interests between Ron Joseph, Sr., Pond, and Ned Van Emon regarding the appropriateness and fairness of the transactions between Columbia and Pond. That is both apparent on its face and abundantly evident from the prior case. Under controlling Sixth Circuit precedent, this calls for the application of res judicata to bar Plaintiff's attempt to relitigate the previous claims.

Even if more formal privity were required, it exists here. Pond's Motion identified many cases finding privity between companies and their officers. (*See* Mot. at 10); *see also Helleman v. Hoenig*, 989 F. Supp. 532, 537 (S.D.N.Y. 1998) (applying res judicata to bar claims against officer and noting that "courts have found that corporate defendants and their directors, officers and large shareholders are in privity because of the identity of interests and close relationship between them"). Even the cases cited by Plaintiff for her misguided "capacity" argument demonstrate privity. *Martin v. JBS Techs., LLC*, 443 F. Supp. 2d 962 (S.D. Ohio 2006), held that privity exists where parties have "a legally recognized interest in the same subject matter" and found no privity only where parties had been *adverse* previously. Similarly, *Tolliver v. Liberty Mut. Fire Ins*. Co., 2010 U.S. Dist. LEXIS 1817, *12 (S.D. Ohio 2010), held that privity existed

because "Liberty Mutual and the Liberty Mutual Group share the same interests and desire the same result in this current litigation."

In the prior litigation, Plaintiff specifically argued that Ron Joseph, Sr. was "on both sides of these transactions" with Pond (*see* Dkt 220, Closing Argument, at 4:9–10), and that he was liable because he was acting for Pond. (*See, e.g.,* Dkt 223, Charging Conf., at 108:13–15 ("he was failing to distinguish between his capacity as Pond, his capacity as each of the Columbias")). Plaintiff tried her breach of fiduciary duty claims based on those arguments and lost. Having specifically contended in the prior trial that Ron Joseph, Sr. was improperly acting for Pond regarding transactions with Columbia, Plaintiff cannot now deny that there is privity with Pond regarding the same transactions.

**B.      Plaintiff is Seeking to Relitigate Claims from the Prior Litigation.**

Plaintiff admits that there is overlap in the "transactions" that are the basis for her current complaint and her prior complaint. (Opp. at 7). Having admitted the identity of the transactions, Plaintiff nonetheless contends that res judicata is not satisfied because Plaintiff "did not bring any claims against Pond or Van Emon in [the prior litigation] and certainly none based on their respective roles in ***the transactions."*** (*Id.*, emphasis added). Plaintiff is confusing the res judicata element of the *same parties or their privies* (discussed at length above and in the Motion) and the element regarding the identity of claims. In essence, she is trying to argue that the claims are not the same because the parties are not the same.

But in jumbling these elements together, Plaintiff admits that the claims ***are*** the same because they arise out of the same "transactions." (*Id.*). Res judicata prohibits a plaintiff from bringing "a second claim later, where . . . the two claims arose from the same transaction, or series of transactions." *Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 Fed. Appx. 476, 482 (6th Cir.

2014) (citations and quotations omitted); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 580 (6th Cir. 2008) (an identity of claims is satisfied if "'the claims arose out of the same transaction or series of transactions,' or if 'the claims arose out of the same core of operative facts.'"). Plaintiff admits that her claims relate to the current defendants' "roles in the transactions" that were the subject of Plaintiff's prior complaints. For res judicata purposes, the claims are the same because "the transactions" (Opp. at 7, 9) they arose from are the same.

Plaintiff also argues that her current claims are somehow distinct because she seeks to base them on a new theory involving knowledge as between Ron Joseph, Sr. and Ned Van Emon. (Opp. p. 8-9). This is the very core of what res judicata is meant to prevent. *E.g., Heike*, 573 Fed. Appx. at 482 (res judicata's "same transaction" test ensures that "plaintiffs cannot avoid the effects of claim preclusion by merely repacking their grievances into alternative theories of recovery or by seeking different remedies"); *Scozzari v. City of Clare*, 2012 U.S. Dist. LEXIS 72584, at *11 (E.D. Mich. May 24, 2012) (claim preclusion means that "having failed to recover on one legal theory, a litigant cannot attempt to relitigate the same claim under a different theory of recovery"). Plaintiff admits that this is exactly what she is trying to do.[2]

Plaintiff also argues that the preclusive effect of the judgment in the prior case is somehow limited in scope because of the order of issues on the verdict form. (Opp. at 9–10). Plaintiff misunderstands the difference between claim preclusion and issue preclusion. Res judicata (claim preclusion) applies to any claim that "could have been litigated" which requires only "the legal possibility of bringing the disputed claims in the previous action." *United States*

---

[2] Oddly, Plaintiff further admits that she is simultaneously trying to hold to her prior theory as well because "Plaintiff does not necessarily believe" the basis of her new theory. (Opp. at 8-9). This is a strange admission, especially where Plaintiff's current claims are based on a verified complaint. Regardless, Plaintiff's acknowledgement that both complaints are based on the same "transactions transferring money or things of value to Pond" (*id.* p. 9), means that her new complaint is barred by res judicata. *See, e.g., Heike*, 573 Fed. Appx. at 482.

*ex rel. Sheldon*, 816 F.3d at 416.  Issue preclusion, by contrast, bars "relitigation of factual or legal issues that were actually litigated and decided in a prior action."[3] *McConnell v. Applied Performance Techs.*, Inc., 2002 U.S. Dist. LEXIS 27599, 24 n.2 (S.D. Ohio Dec. 11, 2002) (citations omitted).  Res judicata (claim preclusion) has a "much broader" scope and "prevents parties or their privies from relitigating claims that were actually litigated, *or might have been litigated*, in a prior action." *Id*. (emphasis added).

As the Supreme Court has explained, "[c]laim preclusion generally refers to the effect of a prior judgment on foreclosing successive litigation of the very same claim, *whether or not relitigation of the claim raises the same issues* as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (emphasis added).  Plaintiff's breach of fiduciary duty claims were tried to verdict and judgment was entered for defendant based on the verdict.  The preclusive effect of the judgment is not limited by Plaintiff's speculation about how the jury might have addressed alternative grounds for a verdict.  The breach of fiduciary duty claims were presented to the jury, the jury returned a verdict against Plaintiff, and judgment was entered on the verdict.  Plaintiff's desire to repeat the claims by seeking to argue new issues to a new jury is barred by res judicata.

Plaintiff also argues that res judicata should not apply because she could not have brought derivative claims in the prior litigation.  (Opp. at 11-12).  This is another proclamation that is untethered from any legal authority.  Nothing prohibited Plaintiff from bringing direct and derivative claims in the prior suit.  *See Smith v. Robbins & Myers*, 969 F. Supp. 2d 850 (S.D. Ohio 2013) (allowing direct and derivative claims to proceed in the same action); *Gaff v. FDIC*,

---

[3] Plaintiff admits that the jury's verdict regarding the fairness of all "other transfers" with Pond may not be relitigated (Opp. at 10 n.5), which necessarily includes all transfers other than management fees and the sweep account (Dkt 210, Jury Verdict, at 5, 7).  The jury also found that Ron Joseph had no "material pecuniary interest" in the sweep account that was "adverse to Columbia" (*Id*. at 7), a decision that is equally binding on Plaintiff.  These findings are entitled to issue preclusion in addition to claim preclusion.  Plaintiff's vague reference to "money and things of value" in her new complaint does not identify any transfer that would not also be precluded by collateral estoppel.

919 F.2d 384 (6th Cir. 1990) (plaintiff asserted direct and derivative claims in same action); *Palmer v. Bowers*, No. 17-11137, 2019-Ohio-1274, 2019 Ohio App. LEXIS 1371 (lawsuit raised both direct claims under *Crosby* and derivative claims). Any supposed "distinction between individual and derivative stockholder suits" is "not rooted in the realities of most individual and derivative suits, which usually are equally contingent upon the proof of the same nucleus of facts." *In re Dayco Corp. Deriv. Sec. Litig.*, 102 F.R.D. 624, 630 (S.D. Ohio 1984).

*Crosby v. Beam* itself recognized that some claims for breach of fiduciary duty could be characterized as direct or derivative. 47 Ohio St. 3d 105, 110, 548 N.E.2d 217 (1989). It imposes no restrictions on bringing derivative and direct claims in the same action. Plaintiff's choice to focus on personal claims rather than those where "recovery . . . accrues to the corporation" (Dkt 160, Order Granting Add'l Defs. MSJ, at 9–10, quoting *Crosby v. Beam*), does not allow her to avoid res judicata. Similarly, Plaintiff's decision to proceed to trial on breach of fiduciary duty claims against Ron Joseph, Sr.—particularly where Plaintiff learned earlier during *depositions* that the management fee structure with Pond was established years earlier by Mr. Van Emon and a prior CFO (*see* Dkt 231, Order Denying Plaintiff's Motion for Entry of Judgment, at 9)—does not entitle her to a "do over" because the jury returned a verdict against her.

Plaintiff is bound by her litigation choices. The Sixth Circuit has held that res judicata applies even when it would be "tactically inconvenient" for a plaintiff to bring all her claims together. *United States ex rel. Sheldon*, 816 F.3d at 417. Plaintiff's extraordinary theory that minority shareholders can repeatedly file direct and derivative lawsuits if they just switch out defendants violates bedrock principles of finality and efficiency. *E.g., Heike,* 573 Fed. Appx. at 482 (res judicata exists "to compel litigants to bring all related claims in a single lawsuit").

### C. Plaintiff is Attempting to Relitigate the Same Cause of Action.

Plaintiff argues that she is asserting a different cause of action in this case because she is seeking to assert claims "against Pond and Van Emon (based on what they did)" instead of "against Ron (based on what he did)." (Opp. at 13). This confuses the res judicata element of the *same parties or their privies* with the element of an *identity of the causes of action.* Arguing that the parties are different (which is misguided, as discussed above) does not mean that the causes of action are different. The Sixth Circuit applies a transactional test to determine whether a cause of action is the same for res judicata purposes. *E.g.*, *Walker v. General Tel. Co.*, 25 Fed. Appx. 332, 336 (6th Cir. 2001); *Apseloff v. Family Dollar Stores, Inc.*, No. 1:06-cv-133, 2006 U.S. Dist. LEXIS 45779, at *6 (S.D. Ohio July 6, 2006) ("The critical element in analyzing res judicata is whether or not the claims arose out of the same transaction.") (Black, J.).

In this case, Plaintiff admits that the transaction is the same. (*See, e.g.*, Opp. at 9, discussing new Plaintiff theory based on evidence from prior trial that "**the transactions** transferring money or other things of value to Pond *did* occur" and that "Pond received the benefit of **those transactions"**) (bold emphasis added). Having failed in claims against Ron Joseph, Sr. regarding "the transactions," Plaintiff is pursuing a new theory seeking to hold Pond and Ned Van Emon liable for "the transactions." Again, this is exactly what res judicata is meant to prevent. *See United States ex rel. Sheldon*, 816 F.3d at 417 ("by bringing two different suits which present two different theories of the case arising from the same factual situation" the plaintiff "engaged in the precise behavior the doctrine res judicata seeks to discourage") (quoting *Wilkins v. Jakeway*, 183 F.3d 528, 535 (6th Cir. 1999)); *see also Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854 (7th Cir. 1985) (holding that claims arising from the same transaction

are the same cause of action and that "[a] mere change in the legal theory does not create a new cause of action").

While Plaintiff argues about the timeframe of the claims in the cases (Opp. at 12–13), she fails to address her own allegations that Pond's alleged liability is based on the transactions that occurred during Mr. Van Emon's tenure. (Compl. in Case No. 1:19-cv-00641 ("New Compl.") at ¶ 77 (Pond participated in the "transactions described above" involving Mr. Van Emon, ¶ 78 (same), ¶ 80). Mr. Van Emon left Columbia in October 2016. (*See* Mot. at 13–14). Plaintiff also fails to address *Dubuc v. Green Oak Township*, 312 F.3d 736 (6th Cir. 2002), under which a plaintiff cannot file repeated challenges to the same course of conduct. (*See* Mot. at 14). Nor does she address this Court's instruction to the jury that Plaintiff's claims included anything "after April 12, 2012." (*See* Mot. at 13 n.4). Though she relies on an attorney's statement describing her claims as ending in 2016 (Opp. at 12 n.7), that statement did not bind the jury— and it conflicts with the 2017 date of her amended complaint and her use of exhibits from 2018 (*see, e.g.*, Dkt 221, Trial Tr. at 8–9, 49). Insofar as Plaintiff argues that this Court erred regarding the application of the statute of limitations (Opp. at 12 n.7), that issue is res judicata and will be determined by the pending appeal. In the end, Plaintiff's reliance on cases like *Tolliver*, 2010 U.S. Dist. LEXIS 1817, is unavailing because they involved *new* claims that covered a *different* time period. Plaintiff has brought the same claims covering a subset of the same time period as the first case.

All of the elements of res judicata are satisfied in this case. Indeed, Plaintiff's own Opposition admits them except for the parties/privity element, as discussed above. (*See also* Opp. at 2, admitting final decision on the merits from prior judgment). Plaintiff is seeking to repeat years of litigation regarding alleged breaches of fiduciary duty concerning transactions

between Columbia and Pond. After years of discovery, amendment of her original complaint before the original trial date, many depositions, and voluminous motion practice, Plaintiff was permitted to try her claims to a jury of her peers. In a multi-week trial, she presented evidence and argument regarding her theories about transactions between Columbia and Pond, including that Ron Joseph was purportedly "on both sides" of the transactions with Pond. A jury considered all of Plaintiff's evidence and argument and returned a verdict against Plaintiff. The Court entered judgment on the basis of that verdict. Plaintiff cannot avoid the preclusive effect of the judgment by changing tactics or theories in order to relitigate the same claims. The Court should apply res judicata to dismiss the repeated claims in order to preserve and enforce the rule of "fundamental and substantial justice, of public policy and of private peace." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917).

## II.     Plaintiff's Complaint Constitutes Impermissible Claim Splitting.

Plaintiff argues that she is not claim splitting because "neither Pond nor Van Emon" were parties to the prior litigation. (Opp. p. 15). This Court has previously held that "[g]enerally, a suit is duplicative if the claims, parties, and available relief do not ***significantly differ*** between the two actions." *Stewart v. P&G*, No. 06-374, 2006 U.S. Dist. LEXIS 102384, at *3 (S.D. Ohio July 21, 2006) (emphasis added; citation omitted). Caselaw cited in Plaintiff's own Opposition (*see* Opp. at 15–16), makes clear that "[t]he rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or res judicata, and thus ***does not require that all aspects of the new and prior suits be identical*** but rather, focuses on whether the two claims arise from the same nucleus of operative fact." *Murray v. UBS Sec., LLC*, No. 14-927, 2015 U.S. Dist. LEXIS 22024, at *8 (S.D.N.Y. Feb. 24, 2015) (emphasis added; internal citations omitted).

As discussed above, the new complaint raises the same claims regarding the same Pond transactions that Plaintiff previously litigated to judgment. That the new complaint names new defendants is of no consequence, as it is still "materially on all fours with" the complaint filed in the prior action. *E.g., Brown v. Davis*, No. 1:19-cv-85, 2019 U.S. Dist. LEXIS 66959, at *6 (W.D. Mich. April 19, 2019) (dismissing complaint raising duplicative claims where "the complaint raises the same claims regarding the same fans" notwithstanding the fact that the new complaint named many new defendants in addition to one prior one).

Plaintiff's only other argument against claim splitting is that she could not have asserted claims against Pond or Van Emon in the prior case because she was bringing direct claims pursuant to *Crosby v. Beam*. (Opp. at 15).[4] As explained above, nothing precluded Plaintiff from bringing those claims at the same time as her direct claims against Ron Joseph, Sr. Plaintiff's tactical decision not to do so is not a basis to repeat years of previously concluded litigation. Unlike the *Wimmer* and *Murray* cases Plaintiff cites (Opp. at 15), she has not identified any jurisdictional or procedural barriers that would have precluded her from bringing such claims. *Wimmer v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. 1:15-CV-241, 2015 U.S. Dist. LEXIS 124277 (S.D. Ohio Sept. 17, 2015) (claims were not duplicative they had not yet accrued at the time of the first lawsuit); *Murray*, 2015 U.S. Dist. LEXIS 22024 at *8–11 (same).

One reason for claim splitting is to avoid the vexation of repeated litigation. The Supreme Court recognized almost 150 years ago as a "settled principle" that allowing litigants to bring piecemeal claims would mean there "would be no end to litigation." *Stark v. Starr*, 94 U.S. 477, 485 (1876). The Court need look no further than Plaintiff's Opposition to see that

---

[4] Plaintiff's argument that she could not bring claims other than her direct *Crosby v. Beam* claim against Ron Joseph, Sr. rings hollow because she **did** bring such other claims. Apart from her ultimately failed attempt to add other defendants to the *Crosby v. Beam* claim, Plaintiff also asserted a "faithless servant" claim against the owners of Pond. (Jan. 10, 2017 First Amend. Compl. in Case No. 1:16-cv-00465, ¶¶ 295–300).

Plaintiff's new action would offend this principle by seeking to inefficiently and inappropriately litigate issues that were the subject of a prior action and now are the subject of Plaintiff's pending appeal. (*E.g.*, Opp. at 8–9, stating that Plaintiff "does not necessarily believe" the basis for her new complaint; at 10 n.5, stating that "certain" transactions between Pond and Columbia were determined to be fair and would be the subject an appeal but the "vast majority" of otherwise unidentified transactions would be the subject of the new complaint; at 12 n.7, indicating that Plaintiff would argue that she is not bound by the Court's rulings regarding the statute of limitations in the prior case). It does not require prescience to understand that Plaintiff's new action would consume resources of the Court and the parties in unproductive (and unfair to Defendants) argument about what was and was not decided in the other case and what is and is not pending on appeal. This is exactly what the rule against claim splitting is meant to prevent. The Court should apply the "settled principle" against claim splitting to bar Plaintiff's attempt to repeat her prior litigation.

### III.     Judicial Estoppel Bars Plaintiff's New Complaint.

Plaintiff argues that judicial estoppel does not apply because she never asserted claims against Pond or Van Emon in the prior suit. (*See* Opp. at 16–17). But "[j]udicial estoppel is not bounded by the limits of mutuality and finality." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1220 (6th Cir. 1990) (citation omitted). Judicial estoppel applies any time a party takes a position inconsistent with one she successfully asserted in a prior proceeding. *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988). In this case, Plaintiff successfully argued that pursuing derivative claims regarding the Pond transactions would produce an "ineffective remedy" because of the "beneficiaries of the recovery." (Dkt 134, Pls. MSJ Opp. at 31). The

Court accepted Plaintiff's argument and permitted her to bring a direct action. (Dkt 161, Order Granting in Part and Denying in Part Ron, Sr.'s MSJ, at 3–4).

Plaintiff brought that direct action and lost. After forcing other parties through years of expensive and time-consuming litigation, being afforded a full and fair opportunity to present her claims to a jury, and losing, Plaintiff now seeks to bring even more litigation. Plaintiff now seeks to reverse course and asserts that her derivative claims regarding *the same transactions* asserted "on behalf of Columbia and will fairly and adequately protect the interests of Columbia and its shareholders." (New Compl., ¶ 2). This is directly at odds with her prior arguments, accepted by the Court, that litigating on behalf of Columbia would not be appropriate or beneficial.

Plaintiff should be barred from challenging the same transactions in the very manner she previously argued would be inappropriate. Plaintiff has previously represented that pursuing these claims derivatively would produce an "ineffective remedy." Justice demands that Plaintiff adhere to her own prior position. Plaintiff's singular desire to prolong and multiply expensive and time-consuming litigation does not justify her attempted change of course now.

**IV.** **Plaintiff's Complaint Fails to State a Claim Against Pond.**

Apart from principles of claim preclusion, Plaintiff's new complaint fails to state any claim against Pond on which relief can be granted. As detailed in Pond's Motion, the complaint does not plead the elements of any cognizable cause of action against Pond. (Mot. at 17–18). Plaintiff's Opposition responds that Plaintiff states a claim for unjust enrichment based on allegedly unauthorized and improper payments. (Opp. at 18). The problem for Plaintiff is that her Opposition confirms in the plainest possible terms that she is attempting to assert a claim for secondary actor liability against Pond that is precluded under Ohio law. *See DeVries Dairy, LLC v. White Eagle Coop. Ass'n*, 974 N.E.2d 1194 (Ohio 2012) (providing Ohio Supreme Court's

answer to certified question and holding that Ohio has "never recognized a claim under 4 Restatement 2d of Torts, Section 876 (1979)" for liability for another's conduct).

Plaintiff's Opposition argues that, notwithstanding this authority, her new complaint satisfies the elements of unjust enrichment because "Plaintiff alleges that Pond *participated in* the undisclosed and unauthorized self-dealing and unjustly received the benefits of those transactions." (Opp. at 18) (emphasis added). Plaintiff's characterization in her Opposition is consistent with the allegations of her new complaint that Pond "participated" in conduct of Defendant Ned Van Emon that purportedly violated his fiduciary duties. (New Compl., ¶ 77, alleging that "Pond's *participation* in the undisclosed and unauthorized self-dealing transactions described above [by Mr. Van Emon] . . . has damaged Columbia" (emphasis added); ¶ 78, alleging that "Pond is liable to Columbia for all damages of Columbia resulting from *Defendant Pond's participation* in the undisclosed and unauthorized self-dealing transactions described above" (emphasis added); and ¶ 81, alleging that Pond should disgorge "profits and other things of value that *Pond has received as a result of Defendant Pond's participation* in the undisclosed and unauthorized self-dealing transactions described above" (emphasis added)). According to Plaintiff's own allegations, the "transactions described above" are alleged breaches of fiduciary duty by Defendant Van Emon. (*E.g., id.* ¶¶ 60–64, 66–69).

Plaintiff seems to think the "participation" allegations save her attempted claim and protests that Pond's argument "relies on something that is not even in Plaintiff's Complaint (any aiding or abetting allegations)." (Opp. at 19). This focuses on labels and misses the substance. While the words "aiding and abetting" do not appear in Plaintiff's complaint, her repeated allegations that Pond is liable based on **"participation"** in alleged breaches of fiduciary duty by Defendant Van Emon (New Compl. ¶¶ 77–78, 81) is exactly the kind of secondary actor claim

that Ohio law forbids. Whatever label Plaintiff attempts to apply, the substance of her claim for "participation" liability is precluded as a matter of law. *See Brown v. Shriver*, 2018 U.S. Dist. LEXIS 20915 *3-4 (S.D. Ohio Feb. 8, 2018) (applying *DeVries* and dismissing claim for "***participation*** in breach of fiduciary duty") (emphasis added); *Cohen v. Dulay*, 2017-Ohio-6973, P27, 94 N.E.3d 1167, 1176 (Ohio App.) (citing *DeVries* and affirming dismissal of claims for "aiding, abetting, ***inducing or participating in*** breaches of fiduciary duties claim" because "such a cause of action is not cognizable under Ohio law") (emphasis added); *Sacksteder v. Senney*, 2012-Ohio-4452, P73, 76 (Ohio. App. 2012) (discussing *DeVries*, affirming dismissal, and stating that "Ohio courts have not recognized a cause of action for ***participation in*** a breach of fiduciary duty") (emphasis added); *Antioch Co. Litig. Trust v. Morgan*, 3:10-cv-156, 2012 U.S. Dist. LEXIS 182997, at *7–10 (S.D. Ohio Dec. 31, 2012) (Black, J.) (dismissing claim for aiding and abetting liability and observing that "[f]ollowing the Supreme Court of Ohio's directive in *DeVries Dairy*, Ohio courts are now dismissing claims for aiding-and-abetting a breach of fiduciary duty on the grounds that ***Ohio does not recognize a claim against 'persons participating in*** the direct actor's breach of fiduciary duty'") (emphasis added, some internal quotes omitted).

Plaintiff's complaint is seeking to impose exactly the kind of "participation" liability that Ohio law does not permit. Indeed, Plaintiff's own Opposition argues that Plaintiff has successfully stated a claim because "***Plaintiff alleges that Pond participated in*** the undisclosed and unauthorized self-dealing." (Opp. at 18) (emphasis added). Plaintiff's references to unjust enrichment cannot save her legally-deficient theory. Allowing recovery for unjust enrichment based on alleged "participation" in breaches of fiduciary duty would eviscerate the Ohio Supreme Court's holding in *DeVries Dairy* that no such claim exists under Ohio law. Moreover,

in this case, Plaintiff expressly alleges that any purported unjust enrichment was caused by Defendant Van Emon's allegedly improper breaches of fiduciary duty: "Van Emon ***has caused Pond to be unjustly enriched*** at the expense of and to the detriment of Columbia by the transactions described above . . ."  (New Compl., ¶ 63) (emphasis added). (*See also id.*, ¶ 60, "By his conduct as described above, Ned R. Van Emon has breached his fiduciary duties to Columbia Oldsmobile Company" & ¶ 66, same, with added allegation that fiduciary duty was allegedly "fraudulently breached").  No matter how she tries to label it, Plaintiff is seeking to hold Pond liable for a result that Plaintiff herself alleges was "caused" by someone else's alleged breach of fiduciary duty.  This is prohibited by *DeVries Dairy* and the cases applying its holding.

## V.   Conclusion.

For all of the above reasons, Pond respectfully requests that the Court dismiss Plaintiff's complaint in this action with prejudice to refiling.

Respectfully submitted,

/s/ Scott A. Kane
Scott A. Kane (0068839)
Colter Paulson (0081903)
Jennifer Dollard-Smith (0093624)
SQUIRE PATTON BOGGS (US) LLP
201 East Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 361-1240
Fax:  (513) 361-1201
scott.kane@squirepb.com
colter.paulson@squirepb.com
jennifer.dollard-smith@squirepb.com

*Attorneys for Pond Realty Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2019 a true and correct copy of the foregoing was filed with the Court's ECF system, which transmitted a copy to all counsel of record.

s/ Scott A. Kane